### Watts v. Barber et al.

(Decided March 19, 1937.)

BAILY D. BERRY for appellant.
DUMMIT & DeWEESE for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Fayette circuit court based on the verdict of a jury in the sum of $732.56 in favor of the appellee, who was the plaintiff below, and against the appellant. During the summer of 1934, appellant, Mrs. Minnie B. Watts, through her husband, listed two farms, known in the record as the Payne's Mill farm and the Pisgah Pike farm, for sale with the real estate agency of the appellee Mrs. E. M. Barber. It was provided in the instructions given to appellee that the Payne's Mill farm might be sold separately, but that the Pisgah Pike farm would not be sold separately from the other. Appellee made an effort to sell the properties to one or more prospective purchasers. In the late summer or fall of 1934, one Whitney Dunlap came to appellee's office and inquired about the Pisgah Pike farm. He was advised that this farm would not be sold unless the Payne's Mill farm was likewise sold, but appellee advised him that she had a prospective customer for the Payne's Mill farm alone, and if she was able to secure a purchaser for the Payne's Mill farm, she would then get in touch with him in regard to purchasing the other place. Appellee fixes the time of this conversation with Mr. Dunlap at some time in November, while Dun-

lap himself states that the conversation occurred prior thereto. Appellee says that the conversation occurred the first of the week and that the following Sunday appellant's husband, Mr. Watts, called appellee and told her to withdraw the listing of the two farms. She says that she "talked to Mr. Dunlap first * * * on Monday and he said that he had bought the farm." She then called Mr. Watts and asked him "why he was taking the farms off of my list and he said that he was dealing with a party and did not want to get mixed up on it." She says, "I told him that Whitney Dunlap was my prospect and that if he made a deal with him he would have to pay me a commission." She further says that this was the first time that she advised Mr. Watts that Dunlap was a customer procured by her.

The testimony shows practically without dispute that, on the Saturday preceding the day when Mr. Watts withdrew the property from appellee's list, Whitney Dunlap and his brother agreed to purchase the two farms together and sent a real estate agent by the name of Palmer Harris to see Mr. Watts that night, and it is not disputed that Mr. Watts agreed at that time to sell to the purchasers produced by Harris. There is a divergence in the testimony as to whether or not Harris at that time told Mr. Watts who it was that he represented. The proof does not show whether or not a formal contract was made on that Saturday night, but the deeds were not executed and delivered until December 13, 1934, which was possibly two weeks after the transactions above detailed. On these facts the jury awarded appellee Mrs. Barber a judgment for the full commission claimed by her on both the Pisgah Pike farm and the Payne's Mill farm. Both Mr. Watts and the real estate agent who finally closed the deal, Palmer Harris, testified that the property had been listed with Harris for sale, as well as being listed with Mrs. Barber, for some months prior to the time when the actual sale was made.

"When ignorant of the efforts of the broker, the owner has the right to act on the assumption that he alone is making the sale, and oftentimes he is thereby induced to accept a reduced price which he would not accept if he believed that he had to pay a commission." Offutt & Oldham v. Winters, 227 Ky. 56, 11 S. W. (2d)

979, 980. Clearly, if it should be shown upon another trial of this action that the trade was closed through the agency of Harris on Saturday night and that the owner was not advised by Mrs. Barber until the following Monday that Whitney Dunlap was her customer, then the court should peremptorily instruct the jury to find for the defendant. The record before us fails to disclose whether the contract to sell was made before or after Mr. Watts received this information, and the jury therefore was authorized to infer that the contract was not finally made until appellant was advised of the claim of Mrs. Barber.

It is not denied that appellee did not have an exclusive agency. The mere listing of the property with her certainly gave her no exclusive right to make the sale. The proof indicates that appellee may have struck the spark which ultimately resulted in a sale being made, but it is by no means satisfactorily shown that her efforts were in any way the procuring cause of the consummation of the trade. On the contrary, the proof shows that another real estate agent actually closed the trade and received a commission. In Higgins v. Miller, 109 Ky. 209, 58 S. W. 580, 581, 22 Ky. Law Rep. 702, this court approved the following quotation from Vreeland v. Vetterlein, 33 N. J. Law, 247, where the court had under consideration the question of which of a number of real estate brokers was entitled to a commission:

"Now, in this competition, the vendor of the property is to remain neutral. He is interested only in the result. But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he refuse to complete the bargain? Can he say to the successful competitor, 'This purchaser was first approached by your rival, and you should have refused to treat with him on the subject?' There is no legal principle upon which such a position could rest. It is contrary to the usages of everyday commerce. Every advertisement of a stock of goods for sale has a tendency to carry off the customers of rival dealers. And if, therefore, it should be known to the vendor of the property that the agent, who introduces a pur-

chaser to him, has, by the usual arts of competition, taken such purchaser out of the hands of his rival, I am not aware of anything in the law which would justify such vendor in a refusal to complete the contract.''

In the case of Talbott v. Treacy, 213 Ky. 8, 280 S. W. 153, a real estate broker had introduced a purchaser and seller. The seller thereafter requested the aid of another broker in closing the transaction, and the court there held that the two brokers were not, under those facts, competitors and that the original broker was entitled to his commission. The court pointed out that the property was not there listed with the second broker for sale in the sense that that term is generally used. It was decided, therefore, that an instruction on the question of competing agents was not required.

The trial court evidently considered the case at bar to be within the principle thus announced in Talbott v. Treacy, supra. However, there was direct testimony in this case that the property had been listed with Mr. Harris for a number of months, and the only contradiction of this is the circumstance that Harris apparently did not become active in the matter until after Dunlap had talked to Mrs. Barber. Whether or not the jury believed the statements of Mr. Watts and of Harris regarding the earlier listing of the property with two agents, certainly the appellant was entitled to have this theory of her case presented to the jury. Appellant offered an instruction on this point similar to the instruction approved in Talbott v. Treacy, although not given in that case. The failure to give this instruction was clearly prejudicial under the circumstances.

Judgment reversed.