## Watts v. Barber et al.

(Decided Oct. 14, 1938.)

412

HUNT, BUSH & LISLE for appellant.
DUMMIT & DeWEESE for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This is the second appeal of this case. See Watts v. Barber, 267 Ky. 798, 103 S. W. (2d) 305. The case was reversed on the former appeal because of the failure of the trial court to give an instruction offered by appellant regarding rival or competing brokers or agents. Upon a return of the case to the circuit court it was retried on the same pleadings and again resulted in a verdict and judgment thereon in favor of appellee in the sum of $732.56. Motion and grounds for a new trial were filed and overruled and this appeal follows.

The ground for reversal insisted on is that the court erred in failing to sustain appellant's motion to peremptorily instruct the jury to find a verdict in her favor. This motion was made at the conclusion of the evidence for appellee and again at the close of all the evidence.

It is insisted for appellee that the former opinion being the law of the case, it determines all questions except the instruction we have indicated, and that instruction having been given on the last trial and the evidence being substantially the same as in the former trial, the case must be affirmed.

In the former opinion it is said [page 306]:

"Clearly, if it should be shown upon another trial of this action that the trade was closed through the agency of Harris on Saturday night and that the owner was not advised by Mrs. Barber until the following Monday that Whitney Dunlap was her customer, then the court should peremptorily instruct the jury to find for the defendant. The record before us fails to disclose whether the contract to sell was made before or after Mr. Watts received this information, and the jury therefore was authorized to infer that the contract was not finally

made until appellant was advised of the claim of Mrs. Barber.

"It is not denied that appellee did not have an exclusive agency. The mere listing of the property with her certainly gave her no exclusive right to make the sale. The proof indicates that appellee may have struck the spark which ultimately resulted in a sale being made, but it is by no means satisfactorily shown that her efforts were in any way the procuring cause of the consummation of the trade. On the contrary, the proof shows that another real estate agent actually closed the trade and received a commission."

It is to be noted from the above quotation that the question of evidence as to whether or not Mrs. Watts received information from appellee that Whitney Dunlap was her prospective purchaser before she made the deal with appellee's competing agent, Harris, was left open to be determined upon another trial. And it is further pointed out in the opinion, supra, that the proof showed that another real estate agent (Harris) actually closed the trade. The question to be determined on this appeal is, which of the agents, appellee or Harris, was the procuring and efficient cause of the sale.

All the evidence shows the following state of facts: Appellant, Mrs. Watts, herself or through and by her husband, Mr. Watts, acting as her agent, had listed the two farms for sale with appellee and Palmer Harris, who were competing or rival agents. Soon after the property was listed with appellee she contacted D R. Kelly but no trade was effected as between them. However, Whitney Dunlap was informed by Kelly that the two farms were for sale and listed with appellee and Whitney Dunlap went to the office of appellee and discussed with her the purchase of one of the farms but did not want to purchase them both. Appellee told Dunlap that the small farm could not be sold without the large one and he said that the two farms not being contiguous, he could not see why Mr. Watts could not sell either one of them separately and asked her to call Mr. Watts and ask him if he would not sell the farms separately, but cautioned her not to inform Watts that he was interested or the prospective purchaser. Appellee called Mr. Watts and imparted to him the information that Dunlap requested, but studiously avoided tell-

ing him that Dunlap was her prospective purchaser, but merely said that she had a prospective purchaser. Mr. Watts refused to recede from his previous order that the small farm could not be sold separately and no further negotiations were had between appellee and Dunlap. However, a few days thereafter Palmer Harris contacted Whitney Dunlap and their negotiations resulted in interesting Whitney Dunlap's brother, Branham Dunlap, in the purchase of one of the farms and the Dunlap brothers agreed with Harris to take the two farms at the price of $100 per acre, the price asked by Mrs. Watts. On a Saturday night Harris went to the Watts home and told Mr. Watts that he had purchasers for both farms at the price asked, and according to Harris' evidence, Mr. Watts accepted the proposition, but Mr. Watts says that he told Harris that Mrs. Watts had retired and that he would not disturb her but requested Harris to come back Monday morning. On Sunday, the following day, Mr. Watts called appellee on the telephone and withdrew the listing of the property with her, thereby terminating her agency. Early Monday morning about eight o'clock or before, Harris returned to the home of Watts and Mr. and Mrs. Watts both accepted the terms of the trade as effected between Harris and Dunlap brothers, upon condition however, that they, Watts, could find other land in which they desired to invest the money; at about nine or ten o'clock of the same Monday morning appellee called Mr. Watts and asked him why he withdrew the listing of the property from her, and he told her he had another deal on and did not want to get mixed up, and she then for the first time informed Watts that if he was dealing with Whitney Dunlap he was her prospective purchaser and she would expect a commission, and Mr. Watts told her that he did not know that Dunlap was in it or had anything to do with it whatever. Within a few days thereafter Watts found other land in which he desired to invest the money and he and Mrs. Watts deeded the two farms in question to the Dunlaps and Harris received the commission.

On cross-examination appellee testified as follows:

"Q. Did you ever at any time submit to Mr. Watts or Mrs. Watts any offer for the purchase of the farm of 148 and 3/16 acres? A. I will say no—you won't let me explain.

"Q. You never at any time gave to Mr. or Mrs. Watts the name of any customer or prospect or customer or any proposition from a customer for the 148 3/16 acres, did you? A. They were to be sold together and I was working on it.

"Q. I did not ask you that. I will ask you again: For the third time, did you ever at any time give to Mr. Watts or Mrs. Watts the name of any customer that you had shown these farms to, or any proposition or offer from any customer? A. I was trying to sell them together as he told me to.

"Q. I did not ask you that. Do you understand my question Mrs. Barber? A. Yes, I do. I will say that I did not give them any offer for the 148 and 3/16 acre farm."

Thus it is shown by appellee's own evidence, as well as the evidence of Mr. Watts, that Mr. Watts never at any time knew that appellee had been negotiating with Whitney Dunlap, nor had she submitted Watts any offer for a sale of the farms.

It is insisted, however, that because Watts accepted the proposition of sale as agreed on between Harris and the Dunlap brothers, on the condition that he could find other lands in which to invest the money and the deeds to the farms were not executed until after appellee told Watts that Whitney Dunlap was her prospective purchaser, there was no sale or closed bargain as between Watts and Harris, and insist upon the rule that an acceptance of an offer of sale must be in accord with the offer—not merely conditional. But, that rule is not applicable or necessary in cases like this. As we have stated, the controlling question is, who was the efficient cause of the sale? It is the settled rule that if a real estate broker or agent introduces or brings in contact a purchaser and the owner, and the efforts of the agent finally result in a sale of the property, to that prospect, that agent is entitled to the commission. Al Koch Real Estate Co. v. Durrett, 214 Ky. 162, 282 S. W. 1079; Higgins v. Miller, 109 Ky. 209, 58 S. W. 580, 22 Ky. Law Rep. 702.

In Hopkins v. Moseley, 105 S. W. 104, 31 Ky. Law Rep. 1308, it is held that where property has been listed for sale with more than one agent, the owner is liable for only one commission, even if more than one agent

416

had dealings with the ultimate purchaser; that the agent who succeeded in bringing the seller and purchaser together and induced them to enter into the contract was the one who earned the commission, regardless of which agent first introduced seller and buyer.

We think the present case comes squarely within the rule of the case supra. All the evidence shows that Harris was an independent and competing agent with appellee, contacted the Dunlap brothers and brought them and the Watts together and that the sale of the property was the results of Harris' efforts and activity. The only connection shown in the record as between appellee and Whitney Dunlap (and none is shown between her and Branham Dunlap) is that Whitney Dunlap received information from D. R. Kelly that the farms in question were listed with appellee and brought Whitney Dunlap in contact with appellee, but their negotiations were not reported to Watts until after Watts had accepted Harris' agreement with the Dunlaps. Later Harris contacted the Dunlap brothers and they decided and agreed with Harris that they would purchase both farms and the negotiations between them and Harris resulted in contacting the owner of the property and an acceptance of their offer, which finally resulted in the sale of the property.

Appellee's own evidence together with the undisputed evidence of other witnesses, measured to and considered in the light of the authorities we have herein cited, impel us to the conclusion that Harris was the efficient cause of the sale, and appellee showed no right of recovery and that appellant's motion for a directed verdict in her favor should have been sustained and a new trial granted.

Judgment reversed and remanded for proceedings consistent with this opinion.