## Messick v. Powell et al.

January 26, 1951.

Rehearing denied March 16, 1951.

Chester D. Adams, Judge.

806

J. Owen Reynolds and Robert H. Hays, for appellant.

Rouse & Hammond, Harbinson, Kessinger, Lisle & Bush, and W. B. Martin for appellee.

STANLEY, COMMISSIONER—Reversing.

The suit was initiated by the former owners of a farm in Woodford County, Sam. H. Powell and Kitty Reed Powell, seeking a declaratory judgment as to which of two real estate agents they are liable to for commission upon its sale. The two defendants, D. R. Messick and A. C. Chinn, respectively, responded with an answer and counter-claim against the plaintiffs and a cross petition against each other. Chinn merely prayed that the court declare and adjudge that the plaintiffs

were indebted to him in the sum of $1,786.50 interest and costs. Messick prayed judgment against the plaintiffs for the same amount. The circuit court sustained the plaintiffs' demurrer to Messick's pleading, overruled their demurrer to Chinn's pleading, and upon Messick declining to plead further, dismissed his counter-claim and cross petition. The court declared the plaintiffs were liable for the payment of only one commission and that was to Chinn since the sale had been closed by him and Messick's exclusive agency had terminated before the sale was made. The plaintiffs having paid the money into court, the clerk was directed to hold it subject to further order. Messick prosecutes an appeal against the Powells and Chinn. There is no appeal by either appellee. The decision must rest upon the contracts and uncontradicted facts pleaded.

On July 6, 1949, the owners signed and delivered to Messick an agency contract. It describes the property, including the crops, to be sold and states the price to be $375 an acre. It continues: "We hereby grant to D. R. Messick for a period of 4 months from this date, the (exclusive) agency or right to sell the above described property and agree to pay you a 3 per cent commission on the price obtained or upon any price exchange or terms which I shall accept, and said commission to be paid you when the purchaser agrees to the terms mentioned herein. You shall be entitled to your commission if the above property is sold to any person or persons with whom you have already had negotiations for the sale of this property, and upon deposit of 10% cash when contract of sale is signed and delivered."

It is of pertinence that on September 24 in a letter to Messick Mr. Powell referred to the contract as expiring on November 6, stated that all parties had believed the property would sell quickly, that the crops had matured and some other stated changes had occurred, that the original price of $375 an acre was reduced to $350 "with the understanding that an attractive offer would be considered." The letter continued: "Please, therefore, go ahead and make your best efforts to dispose of the property during what time remains on the contract made on July 6. The contract will not be renewed for the reason that we must set up our program

for next year. We cannot afford to have the property vacated and with no one in charge.''

On December 9, 1949, Chinn submitted an offer of Mitchell Brothers to buy the property for $59,550, the equivalent of $300 an acre. As evidence of good faith and to bind the contract, $6,000 had been deposited with Chinn to be applied on the purchase price. Other terms were stated. The owners signed the following acceptance: ''The above proposition is hereby accepted this 9th day of December, 1949, and the seller agrees to pay the regular rate of commission as prescribed by the Lexington Real Estate Board.''

The essential part of Chinn's affirmative pleading, other than relying upon the accepted offer, is that he had brought the buyer and sellers together and induced them to enter into the contract of sale.

The essential part of Messick's affirmative pleading is that pursuant to the terms of his agency contract, he had advertised the property for sale, devoted time and labor and incurred considerable expense in interesting various persons in buying it, including Mitchell Brothers, with whom he had negotiated. He alleges he had succeeded in getting them to offer $275 an acre, which he had reported to the plaintiffs while the agency contract was in full force and effect and before the contract of December 9 was made with Chinn. Continuing, he alleges: ''Defendant states that on December 9th, 1949 after he had had the above negotiations with Mitchell Brothers and had reported them to plaintiffs the said Mitchell Brothers came to his office for the purpose of raising their offer for said property to $300 per acre, but not finding this defendant, they then went to the office of the defendant, A. C. Chinn, and made the offer of said amount through him which was accepted by plaintiffs.'' Messick sets forth the sale to Mitchell Brothers and charges that the plaintiffs are indebted to him as above. He relies particularly upon this provision in his contract of agency: ''You shall be entitled to your commission if the above property is sold to any person or persons with whom you have already had negotiations for the sale of this property.''

We first dispose of the argument of the appellees, the Powells, that Messick's contract is unenforceable

because unilateral or only an offer to enter into a contract since it was not signed by him and he made no promise to do anything; in short, as they express it, "there is not so much as a peppercorn of consideration" moving from him to the owners. It seems to us the question is settled by T. M. Gilmore & Co. v. W. B. Samuels & Co., 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611, which reaffirms the decisions that the undertaking by a broker to perform such a contract and his efforts to effect a sale constitutes the consideration which may not have been expressed in the instrument. The appellees seek to escape the force of the opinion by pointing out that in the case the broker had fulfilled his contract and had in fact produced a purchaser and accomplished a sale, so the statement that the "undertaking" by the agent was sufficient consideration was obiter dictum. But in the later case of Carter v. Hall, 191 Ky. 75, 229 S. W. 132, the ruling is certainly not dictum, for the owner, in violation of the rights granted the broker, sold the land himself. As stated in American Law Institute, Restatement Agency, Sec. 445, Comment c, ordinarily in the employment of a broker there is no bilateral contract but merely an offer on the part of the principal to pay commissions in consideration that the broker produce a customer ready and willing to contract upon the principal's terms and able to perform such a contract; hence, the broker does not earn the commission unless his efforts are successful. But further Comment e as to a condition expressed in a contract of agency that a sale must be executed, it is stated to be the law that the agent is entitled to his commission if the principal is responsible for the non-performance of the condition. Carter v. Hall, supra, is in accord. The case particularly relied upon by the appellee, Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669, 19 Am. St. Rep. 205, is not at variance. The opinion clearly and logically states the proposition of a unilateral instrument and reaches the right conclusion in denying the broker his commissions for it appears that though he made an effort to find a buyer, he produced none, so he could not complain because after his unexecuted authority was revoked, the owner sold the land himself without the aid of the broker. The distinction between that and our Carter case, as well as the instant one, is that in the Minnesota case there was no default on the part of the owner.

We think this contract comes within the elementary principle that where a party makes an offer and another acts upon it, the party making the offer is bound to perform his promise. We think the contract became clothed with a valid consideration which rendered the promisors liable. Our decision rests upon the consideration of the patently ambiguous provision that the agent would be entitled to his commission if the "property is sold to any person or persons with whom you have already had negotiations" was put in the contract for some purpose and must be given some effectual meaning. The word "already" means "Prior to some specified time, either past, present or future." Webster. (1) Did the parties mean to speak as of the date of the contract and intend to refer to Messick's past efforts or negotiations which "you have already had?" (2) Did they mean that Messick should be entitled to the commission if the owners themselves sold the property during the four months period? (3) Did they intend the phrase to speak as of the end of the definitely fixed period of four months exclusive agency and to mean that if after its termination the property should be sold by the owners to any person or persons with whom Messick had had negotiations? (1) It is illogical to say the specified time referred to the past, or negotiations prior to the execution of the contract of agency. That assumes an unlikely activity and such negotiations would, of course, have become merged into a consummated sale. (2) The argument for the interpretation that it refers to a sale made by the owners themselves presently, or during the four month period loses force when it is noted that where there is an exclusive agency for a specified time, the owner is liable for the commissions if he sells the property himself. Murphy v. Sawyer & Warford, 152 Ky. 645, 153 S. W. 991; Carter v. Hall, supra, 191 Ky. 75, 229 S. W. 132. Some courts draw a distinction between an exclusive agency and an exclusive right to sell and give greater force to the latter term. 8 Am. Jur., Secs. 57, 192, 195. The present contract confers both an agency and a right. (3) It seems to us the most logical interpretation is that the time specified was the future, or at the termination of the exclusive agency and right. "You have already had" negotiations recognizes that during the period he would have solicitated and interested prospective purchasers. This

is indicated by the fact that the agreement immediately follows the sentence which grants the agent the "exclusive agency and right to sell," and defines his commissions. Furthermore, real estate brokerage is a highly competitive business and it is a logical conclusion that the provision was intended to protect the agent beyond the duration of the exclusive "agency or right" to sell the property in order that he might not be deprived of his compensation for finding and presenting a purchaser during that period should the owner sell to him. Without such protection, it would have been an easy matter for the owners to circumvent his right by postponing acceptance until the definite time had expired. Being silent as to the duration of this conditional extention of a right to commissions, under general rules a reasonable time will be imported. A month and three days was a reasonable time under the circumstances.

In E. A. Strout Co. v. Hubbard, 104 Me. 366, 71 A. 1020, 1023, a provision in a contract was to the effect that if the farm should be sold by the agent after withdrawal of the exclusive agency to a customer he had recommended or who had learned through him that it was for sale, the owner would pay a commission. After withdrawal of the exclusive agency, a sale had been made by the owner to a person who had been recommended by the agent. In holding the agent entitled to the commission, the court said: "By the contract it was sufficient to show that the plaintiff sowed seed, and the defendant reaped his harvest, where the seed had been sown. It was not incumbent on the plaintiff to trace the development of the seed and the growth of the plant. It was not necessary to show even that the harvest came from the plaintiff's seed; for such was not the contract."

In Moore v. Holman Real Estate Co., 129 Ark. 465, 196 S.W. 479, a real estate broker was given the exclusive agency for a period of three months. That provision was followed by the statement that the commission would be paid if the property should be sold "no matter by whom" during the period or afterward "on information secured through this agency." During the existence of the agency, the agent interested a prospective buyer and endeavored, without success, to bring the parties together. After the definite period

had expired, negotiations between the owner and the prospect produced by the agent resulted in a contract of sale upon different terms. The court held the sale had been made on information received through the agent, and, recognizing that the proper construction of the provision required that to be effective the sale must have been made within a reasonable time after the expiration of the definite period, held that two months was reasonable and that a directed verdict for the broker was proper, although the owner testified that he had acted in good faith and would not have consummated the sale had he known the agent would claim or was entitled to the commissions.

Of like effect is Williams v. Leslie, 111 Ind. 70, 12 N.E. 102; Wells v. Andreas, 135 Wis. 319, 115 N.W. 792.

The Georgia Court of Appeals gave a different construction to a similar provision. It was that "should, after the expiration of 120 days [the owner], sell said property to the [agent's] customer or client, direct or through any one else," the agent should, nevertheless, have his commission. The court held that time was of the essence of an exclusive agency contract and that in the absence of bad faith or fraud upon the part of the owner in selling the property after the expiration of the term to a person with whom the agent had been negotiating prior thereto, the agent was not entitled to the commission stipulated notwithstanding the provision of the contract. Morris v. Jackson, 9 Ga. App. 848, 72 S. E. 444.

We are not willing to follow the Georgia case. It is not in accord with the weight of authority. We agree with the reasoning and the conclusions of the other courts.

It does not seem to us that the various cases involving a contest between two or more real estate agents, all of whom had authority to make a sale, are in point, the issues there being which agent was the procuring or efficient cause of the consummated transaction. Of such are Kice v. Dugan, 143 Ky. 676, 137 S.W. 240, and the cases cited therein; Al Koch Real Estate Co. v. Durrett, 214 Ky. 162, 282 S.W. 1079; Watts v. Barber, 275 Ky. 411, 121 S.W.2d 59. And the exclusive agency provision goes out of the case except as being that upon which Messick's rights de-

pend under the provision defining them after its termination.

Messick had had "negotiations" with Mitchell Brothers and had in fact presented an offer which was not acceptable to the owners. The fact that Mitchell Brothers subsequently made a better and an acceptable offer through another agent cannot deprive Messick of the right to the commission which the Powells had agreed to pay him if he can prove the allegations of his counter-claim. This is to hold that the demurrer to his pleading should have been overruled as it states a cause of action in our opinion.

Accordingly, the judgment is reversed.