2015 MAR -9 AM 9: 03


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| P.H.T.S., LLC, | ) | No. 71591-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| VANTAGE CAPITAL, LLC, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 9, 2015 |

SCHINDLER, J. — During the one-year redemption period under chapter 6.23 RCW, a licensed real estate broker may list property sold at a sheriff's sale. If the property is not redeemed by the judgment debtor at the end of the one-year period, the purchaser at the sheriff's sale shall accept the highest qualifying offer as defined under RCW 6.23.120(1). On cross motions for summary judgment, the court ruled P.H.T.S. LLC made the highest qualifying offer and ordered the sale of the property according to the terms of the offer. We affirm.

## FACTS

The facts are not in dispute. Vitaliy Glinsky purchased a condominium unit in Rosemount Heights. Rosemount Heights is located in Lynnwood at 2802 143rd Street SW. On September 27, 2006, BAC Home Loans Servicing LP[1] (BAC) recorded the deed of trust on the condominium. Ownership of the condominium unit is subject to the

---

[1] Formerly known as Countrywide Home Loan Servicing LP.

recorded declaration for Rosemount Heights. The Rosemount Heights Condominium Homeowners Association (Association) assesses monthly fees for a proportionate share of the common expenses. The Association is authorized to file a lien on property for unpaid assessments. The lien is subject to foreclosure.

Glinsky stopped paying the monthly assessments in September 2011. In July 2012, the Association filed a lien and a judicial foreclosure action. The complaint named Glinsky, his marital community, and Bank of America NA, the successor in interest to BAC, as defendants. Neither Glinsky nor Bank of America filed an answer or responded to the lawsuit.

On September 26, 2012, the court entered an order of default, a default judgment, and a decree of foreclosure. The default judgment against Glinsky was in the amount of $8,642.54 plus interest. The order of foreclosure directs the Snohomish County Sheriff to sell the property and apply the proceeds toward the payment of the default judgment.

On December 14, 2012, Vantage Capital LLC (Vantage) purchased the condominium at the public auction. The certificate of sale states that as the highest bidder for the sum of $45,500, Vantage received all "right, title and interest of the judgment debtor."[2] The certificate expressly states that the sale is subject to the one-year statutory redemption period[3] for the judgment debtor. The one-year redemption period expired on December 16, 2013.

One day before December 16, licensed real estate broker Thomas J. Sullivan listed the condominium for sale on Zillow.com.[4] The Zillow.com posting states the

---

[2] Capitalization omitted.
[3] RCW 6.23.020(1)(b).
[4] Zillow.com is an on-line real estate database.

condominium is for sale "[b]y [o]wner" for $170,000 and describes the property as a "1000 square foot condo home" built in 2003 with "2 bedrooms and 2.0 bathrooms," an attached garage, and forced air heating.

At 3:00 p.m. on December 16, Sullivan delivered an "Offer to Purchase" from P.H.T.S. LLC to Vantage. Sullivan is a managing member of P.H.T.S. The Offer to Purchase states, in pertinent part:

1. P.H.T.S., LLC offers to purchase the real property described in the attached Sheriff's Certificate of Sale for $70,000.

2. Title to the real property will be conveyed by bargain and sale deed in the form attached. The title conveyed will be in a condition consistent with the covenants of a bargain and sale deed.

3. P.H.T.S., LLC will pay all recording fees, excise taxes and closing costs occasioned by this sale.

4. This offer is made pursuant to RCW 6.23.120. The supplementary terms, conditions and requirements contained in that statute are incorporated into this offer.

5. The licensed real estate broker through whom this offer is made is Thomas J. Sullivan, Broker License No. 8448, P.O. Box 1475, Edmonds, WA 98020, 206-396-5868.

The Snohomish County Sheriff issued the deed to Vantage.

On January 21, 2014, P.H.T.S. filed a declaratory judgment action against Vantage. P.H.T.S. alleged that because the offer to purchase was the highest qualifying offer under RCW 6.23.120, Vantage had an obligation to accept the offer. P.H.T.S. requested the court order Vantage to sell the condominium to P.H.T.S. in accordance with the terms of the offer. Vantage admitted P.H.T.S. made "the only offer received during the redemption period" but denied it was a "qualifying offer under RCW 6.23.120."

P.H.T.S. and Vantage filed cross motions for summary judgment. The court

3

ruled that as a matter of law, P.H.T.S. made a qualifying offer to purchase the condominium under RCW 6.23.120. The court ordered Vantage to sell the property to P.H.T.S. according to the terms of the offer.[5] Vantage appeals.[6]

ANALYSIS

Vantage contends the offer P.H.T.S. made to purchase the condominium does not meet the requirements or intent of RCW 6.23.120.

This court reviews summary judgment and statutory interpretation de novo. Camica v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014); Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

Chapter 6.23 RCW governs the statutory redemption of real property sold at a sheriff's sale. Real property sold "subject to redemption" may be redeemed by the judgment debtor, judgment creditor, or successors in interest. RCW 6.23.010. There is a one-year redemption period for property the judgment debtor "would be entitled to

---

[5] The order on summary judgment states, in pertinent part:

(1) P.H.T.S., LLC has made the highest qualifying offer to Vantage Capital, LLC under the terms of RCW 6.23.120[.]

(2) Vantage Capital, LLC is obligated to sell the above-described real property to P.H.T.S., LLC under the terms of the offer.

(2a) There shall be added to the deed from Vantage Capital, L.L.C. to P.H.T.S., LLC the following language: Title conveyed hereby shall not exceed in scope or quality that which Vantage Capital, L.L.C. acquired from the Sheriff of Snohomish County and shall be subject to any all infirmities now or hereafter pertaining to such sheriff's deed.

(3) The motion of Vantage Capital, LLC is denied.

(4) The duties of the parties in the closing of the transaction, namely the plaintiff's deposit of the purchase price and the defendant's execution and deposit of the deed, are stayed for 30 days.

(5) Upon closing, the purchase price shall be distributed in the following amounts:

| Vantage Capital, LLC | $61,187.90 |
| Thomas J. Sullivan | $3,671.27 |
| Vitaliy Glinsky | $5,140.83 |
| Total | $70,000.00. |

[6] We grant Vantage's motion to strike the excerpts from newspaper articles P.H.T.S. includes in its brief on appeal. The articles were not considered by the trial court. See RAP 9.12 (on review of order granting summary judgment, "appellate court will consider only evidence and issues called to the attention of the trial court").

4

claim as a homestead." RCW 6.23.020(1)(b); RCW 6.23.120(1). To redeem the property from the purchaser, the judgment debtor must pay (1) the amount bid at the sheriff's sale with interest, (2) any assessment or taxes paid by the purchaser with interest, and (3) any sum paid by the purchaser on a prior lien or obligation secured by an interest in the property to the extent payment was necessary to protect the judgment debtor or a redemptioner. RCW 6.23.020(2).[7]

During the one-year redemption period, "any licensed real estate broker within the county in which the property is located may nonexclusively list the property for sale whether or not there is a listing contract." RCW 6.23.120(1). If the judgment debtor does not redeem the property and a sheriff's deed is issued, then the property owner "shall accept the highest current qualifying offer upon tender of full cash payment within two banking days after notice of the pending acceptance is received by the offeror." RCW 6.23.120(1). If tender of full cash payment is not timely made, the opportunity to purchase the property "shall pass to the next highest current qualifying offer, if any." RCW 6.23.120(1).

The statute defines a "qualifying offer" as an offer (1) made during the redemption period (2) through a licensed real estate broker listing the property and (3) at least equal to the sum of "[o]ne hundred twenty percent greater than the redemption amount" under RCW 6.23.020 plus the normal commission of the real estate agent making the offer. RCW 6.23.120(1). At closing, the property owner receives 120 percent of the redemption amount, the real estate broker receives a commission, and any excess is paid to the judgment debtor. RCW 6.23.120(2).

---

[7] A redemptioner who redeems from the purchaser must pay the same amounts as required of the judgment debtor plus the amount of any lien by judgment, decree, deed of trust, or mortgage held by the purchaser that is prior in time to the lien of the redemptioner who seeks to redeem. RCW 6.23.020(2)(d).

RCW 6.23.120 states:

(1) Except as provided in subsection (4) of this section, during the period of redemption for any property that a person would be entitled to claim as a homestead, any licensed real estate broker within the county in which the property is located may nonexclusively list the property for sale whether or not there is a listing contract. If the property is not redeemed by the judgment debtor and a sheriff's deed is issued under RCW 6.21.120, then the property owner shall accept the highest current qualifying offer upon tender of full cash payment within two banking days after notice of the pending acceptance is received by the offeror. If timely tender is not made, such offer shall no longer be deemed to be current and the opportunity shall pass to the next highest current qualifying offer, if any. Notice of pending acceptance shall be given for the first highest current qualifying offer within five days after delivery of the sheriff's deed under RCW 6.21.120 and for each subsequent highest current qualifying offer within five days after the offer becoming the highest current qualifying offer. An offer is qualifying if the offer is made during the redemption period through a licensed real estate broker listing the property and is at least equal to the sum of: (a) One hundred twenty percent greater than the redemption amount determined under RCW 6.23.020 and (b) the normal commission of the real estate broker or agent handling the offer.

(2) The proceeds shall be divided at the time of closing with: (a) One hundred twenty percent of the redemption amount determined under RCW 6.23.020 paid to the property owner, (b) the real estate broker's or agent's normal commission paid, and (c) any excess paid to the judgment debtor.

(3) Notice, tender, payment, and closing shall be made through the real estate broker or agent handling the offer.

(4) This section shall not apply to mortgage or deed of trust foreclosures under chapter 61.12 or 61.24 RCW.

Vantage does not dispute that Sullivan was a licensed real estate broker in Snohomish County, that Sullivan listed the property for sale on Zillow.com during the statutory redemption period, that Sullivan made an offer on behalf of P.H.T.S. before expiration of the redemption period, or that the offer was at least 120 percent of the redemption amount plus the normal real estate broker commission.

Vantage contends the listing on Zillow.com did not comply with the requirements for a qualifying offer under RCW 6.23.120(1) because it was posted one day before the end of the redemption period, the sale price of $170,000 was more than double the

minimum qualifying offer required by the statute, and the advertisement did not reference RCW 6.23.120 or provide a deadline for offers.[8] Vantage argues that as a consequence, the listing on Zillow.com is contrary to the intent of the statute to generate multiple offers.

When interpreting a statute, our objective is to ascertain and give effect to the legislature's intent. City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009). Statutory interpretation begins with the statute's plain meaning. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). When the meaning of statutory language is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. City of Spokane v. Spokane County, 158 Wn.2d 661, 673, 146 P.3d 893 (2006). If a statute is plain and unambiguous, the meaning of the statute must be determined from the wording of the statute itself. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 608-09, 998 P.2d 884 (2000). If the plain language is subject to only one interpretation, our inquiry is at an end. Lake, 169 Wn.2d at 526. "[W]e 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Canawill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). "In general, words are given

---

[8] For the first time at oral argument, Vantage's attorney noted a discrepancy in the language used in the statute to argue the offer was not a "qualifying offer." Specifically, that the offer was not "one hundred twenty percent greater than" the redemption amount. However, the attorney candidly conceded the legislature did not intend to require a qualifying offer be 120 percent greater than the redemption amount. Below and on appeal, Vantage did not dispute that the minimum qualifying offer for the condominium under RCW 6.23.120 is 120 percent of the redemption amount plus a normal real estate commission of 6 percent, or $64,859.18. We do not consider arguments raised for the first time at oral argument. RAP 9.12; Apostolis v. City of Seattle, 101 Wn. App. 300, 306, 3 P.3d 198 (2000) (argument raised for first time at oral argument is not properly before the court and need not be considered). Nonetheless, while it is clear the legislative intent is that a qualifying offer must be 120 percent of, not 120 percent greater than, the redemption value, the legislature should consider amending the statute to clarify that a qualifying offer must be 120 percent of the redemption amount, not 120 percent greater than the redemption amount.

7

their ordinary meaning, but when technical terms and terms of art are used, we give these terms their technical meaning." Swinomish Indian Tribal Cmty. v. Dep't of Ecology, 178 Wn.2d 571, 581, 311 P.3d 6 (2013).

The statute does not define "list" or "listing." Under the plain language approach, we may look to dictionary definitions to give undefined words their ordinary meaning. Burton v. Lehman, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005). Webster's Third New International Dictionary 1320 (2002) defines "list" as meaning "to place (property) in the hands of a real-estate agent for sale or rent." "Listing" is defined as "an authorization to a real-estate broker to sell or rent property[;] a broker's record of available properties[;] a piece of property listed with a real-estate broker." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 1320.

Likewise, Black's Law Dictionary 1073 (10th ed. 2014) defines "list" as meaning "[t]o place (property) for sale under an agreement with a real-estate agent or broker." Black's Law Dictionary defines "listing" as follows:

> An agreement between a property owner and an agent, whereby the agent agrees to try to secure a buyer or tenant for a specific property at a certain price and terms in return for a fee or commission.—Also termed listing agreement; authorization to sell.

BLACK'S LAW DICTIONARY, at 1073.[9]

Washington case law also describes a "listing agreement" as an agreement between a property owner and a real estate broker that gives a broker the " ' "agency or right" to sell the property.' " Whiting v. Johnson, 64 Wn.2d 135, 140, 390 P.2d 985 (1964) (quoting Messick v. Powell, 314 Ky. 805, 811, 236 S.W.2d 897 (1951)).

Under the plain language of the statute, a licensed real estate broker within the county in which the property is located is authorized to "list the property for sale." RCW

---

[9] Italics omitted.

6.23.120(1). RCW 6.23.120 does not require the licensed real estate broker to list the property for sale for a specific time or for a certain amount or to refer to the redemption statute. Nor does the statute preclude the licensed real estate broker from making an offer right before the expiration of the redemption period. It is up to the legislature, not the court, to amend the statute and impose additional requirements. Schrom v. Bd. for Volunteer Fire Fighters, 153 Wn.2d 19, 37, 100 P.3d 814 (2004); Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). Under the plain language of the statute, the court did not err in concluding P.H.T.S. made a qualifying offer.

In the alternative, Vantage argues that even if P.H.T.S. made a "qualifying offer" under RCW 6.23.120, it was not entitled to specific performance based on equitable grounds. Vantage asserts Sullivan violated the good faith duty of a real estate broker under RCW 18.86.030(1)(b). P.H.T.S. denies Sullivan violated his duty of good faith but asserts Vantage is not entitled to equitable relief.

" '[T]he question of whether equitable relief is appropriate is a question of law,' and like all issues of law, . . . review is de novo." Bank of Am., NA v. Prestance Corp., 160 Wn.2d 560, 564, 160 P.3d 17 (2007)[10] (quoting Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 374, 113 P.3d 463 (2005)).

In Fidelity Mutual Savings Bank v. Mark, 112 Wn.2d 47, 767 P.2d 1382 (1989), the Supreme Court held that equitable relief was not available because the statute created a substantive right.

> This case is distinguishable from [GESA Federal Credit Union v. Mutual Life Insurance Co. of N.Y., 105 Wn.2d 248, 713 P.2d 728 (1986)], however. In that case, we held:
> "The redemption statute involves a number of provisions, some of which confer a statutory right, e.g., RCW 6.24.130,

---

[10] Alteration in original.

and some of which establish a procedure by which that right is perfected, e.g., RCW 6.24.145. 'A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right.' Moreover, it has long been the practice in this state to liberally construe remedial legislation to accomplish legislative purpose."
(Citations omitted. . . .) GESA Fed. Credit Union, 105 Wn.2d at 254-55. In GESA, our resort to equity was proper because the statute at issue was remedial. Here, however, the statute at issue creates a substantive right. Consequently, we may not alter the scheme the Legislature has established.

Fidelity Mut., 112 Wn.2d at 54-55.[11] Here, as in Fidelity Mutual, the statute creates a substantive right to purchase property by making a qualified offer before the expiration of the redemption period.

Because P.H.T.S. complied with the requirements of the statute by making the highest qualifying offer during the redemption period, we affirm the order requiring Vantage to sell the property according to the terms of the offer.

WE CONCUR:

_____
Trickey, J.

_____
Cox, J.

_____
Spearman, J.

---

[11] Italics omitted.

10