L. U. PITTS, Plaintiff-Appellant,

v.

McGRAW–EDISON COMPANY, Defendant-Appellee.

No. 15207.

United States Court of Appeals Sixth Circuit.

March 25, 1964.

R. Grattan Brown, Jr., Memphis, Tenn., Charles C. Crabtree, Daniel D. Canale, Memphis, Tenn., on the brief; Montedonico, Boone, Gilliland, Heiskell & Loch, Memphis, Tenn., of counsel, for appellant.

Carroll C. Johnson, Memphis, Tenn., James M. Manire, Memphis, Tenn., on the brief, for appellee.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Plaintiff, L. U. Pitts, brought this action in the District Court to recover damages in the amount of $15,000 for an alleged breach of a retirement contract by the defendant. He also sought a declaration of rights with respect to future payments under the contract. Jurisdiction is based upon diversity of citizenship and the amount involved. Section 1332, Title 28 United States Code. Plaintiff appeals from a judgment dismissing the action.

The facts, which are mostly undisputed, are as follows.* Plaintiff was a manufacturer's representative in Memphis, Tennessee, for a period of many years prior to July 1, 1955. For approximately twenty-five years preceding that date, he sold the products of the defendant's predecessor and the defendant, McGraw-Edison Company, on a commission basis in an assigned territory comprising several southern states. In his capacity as a manufacturer's representative he was an independent business man, hiring and firing his own employees, paying his own expenses and overhead, and managing his business as he saw fit. He had no written contract with the defendant and the defendant had no obligation to him except to compensate him on a commission basis for sales made in the assigned territory. The relationship between the parties was independent and was not that of employer and employee. It was terminable at will, without notice by either party at any time. The plaintiff was free to handle any other products he desired, including those of competitors of the defendant, and he did so until early in 1954, when on his own volition and without any requirement by the defendant, he discontinued his representation of other manufacturers.

At no time during the relationship of the parties did the plaintiff make contributions to a pension fund or a retirement fund of any kind.

In April 1955 when the plaintiff was approximately 67 years of age, he accompanied O. Dee Harrison, the sales manager for the defendant, to Little Rock, Arkansas, for a meeting with one Paul Thurman, who had formerly worked for the plaintiff but at the time was working the State of Arkansas as a factory representative for the defendant and others. At that meeting Mr. Harrison told the plaintiff that the defendant was making arrangements for the plaintiff to retire at a time shortly thereafter and for Thurman to take over the plaintiff's territory, with the plaintiff receiving an overwrite commission of 1% from the defendant on all sales made in that territory. Thereafter the plaintiff received a letter dated July 1, 1955, from

---

* The parties will be referred to as they were in the District Court.

O. Dee Harrison reading in part as follows:

"Dear Lou:

"Whether you know it or not, you are on retirement effective July 1st. But to make the matter of retirement a little less distasteful, we are going ahead as you and I talked last time we were together by paying each month 1% of the * * * sales from the Mississippi and Tennessee states. You will get your check each month just as you have been in the habit of getting our check on commissions. Let us hope that there is enough to help keep a few pork chops on the table and a few biscuits in the oven.

"We are going to keep you on the list for bulletins, Lou, so that you will know what is going on. I know that you will help Paul in every way that you can, and I know that your help will be greatly appreciated by Paul."

There was an error in this letter regarding the territory to which it referred and Mr. Harrison corrected this error in a letter to the plaintiff dated July 20, 1955. In addition, this letter contained the following:

"Now in regard to your 1% deal, Lou, I have talked with our office in Boonville on this matter. There is a problem of keeping things straight without undue complications, also. So what I am going to do is to give you 1% on Paul's territory, which will enable Dorothy to quickly figure the thing each month. * * * I am sorry I cannot include the rest of the United States, Lou, but I don't think this will be too bad a proposition for you."

The letter also said in closing:

"We will keep you on the mailing list and any time you can throw a little weight our way we will appreciate any effort you make, Lou. And any time you have any questions, don't be afraid to ask us about them."

Although plaintiff testified that the arrangements were completed at the April meeting in Little Rock, he unequivocally conceded on his cross-examination that the foregoing two letters contained the entire understanding between him and the defendant, and that there was nothing else either orally or in writing.

The plaintiff received a check from the defendant each month regularly from July 1955 through June 1960 covering the 1% commission on sales in the specified territory. The amounts received were:

| | |
|---|---|
| For the last six months of 1955, | $ 759.67 |
| For 1956, | 2,630.23 |
| For 1957, | 2,696.31 |
| For 1958, | 2,629.04 |
| For 1959, | 4,337.38 |
| For first six months of 1960 | 3,233.46 |

Under date of July 23, 1960, the plaintiff was advised by letter from the Division Controller of the defendant, reading in part as follows:

"Dear Mr. Pitts:

"I am enclosing our check # 50064752 for $238.51 which, according to our records, completes the five year series of payments to be paid after your retirement from the Company."

Plaintiff wrote the defendant protesting the discontinuance of the payments. Mr. Harrison responded at some length, pointing out that the plaintiff was at no time an employee of the defendant, that he was not eligible for any company pension had there been one available, which there was not, and that in order to make the retirement a little less painful, the Company had voluntarily paid the 1% commission for a period of five years but was not willing to continue it for an additional period. He pointed out that this was the same position taken by the Company with respect to three other employees who were all retired at the same general period, and that he did not know of any other company which

gave any separation pay at all to manufacturer's representatives who represented them.

This action followed. Following a trial to the Court without a jury, the District Judge held that the plaintiff was not entitled to recover any amount whatever and dismissed his complaint.

• Plaintiff contends that the negotiations between the Company and him leading to his retirement were in substance an offer on the part of the Company that if he would retire as a manufacturer's representative on July 1, 1955, and turn over to his successor representative all of his customer account records containing valuable information on active and inactive accounts, which had been built up over a period of twenty years or more, the Company would pay him monthly thereafter a 1% overwrite commission on sales by the defendant in the territory which was at that time allotted to him; that after considering the offer, he accepted it and thereafter carried it out by retiring as a manufacturer's representative and turning over to his successor the stipulated records; and that the defendant breached the contract by refusing to make the payments after July 1, 1960.

Defendant contends that the so-called "retirement" of the plaintiff was actually not a "retirement" in that the plaintiff was not an employee of the defendant, but was a termination of defendant's business relations with the plaintiff, made effective by a unilateral act on its part, which it was legally authorized to do; that it was not an offer to the plaintiff on its part and acceptance thereof by the plaintiff; that it imposed no contractual obligation on its part to make any payment to the plaintiff; and that even if construed as a retirement contract between it and the plaintiff, it was void and unenforceable for lack of consideration.

In considering these contentions, it must be kept in mind that the plaintiff was an independent business man, not an employee of the defendant. His relationship with the defendant could be terminated by either party at any time without notice and without liability therefor. The plaintiff in his testimony concedes this, and it was so found as a fact by the District Judge. Unless the plaintiff is able to establish a valid contract obligating the defendant to pay the "retirement" benefits claimed, he has no cause of action.

Assuming, without so holding, that there was a promise by the defendant to pay the plaintiff the retirement benefits claimed, we are faced with the question of what consideration passed from the plaintiff to the defendant to make this promise enforceable.

•Plaintiff vigorously argues that although he did not *promise* to do anything or to refrain from doing anything, as plainly appears from the two letters, and so conceded by him, consideration nevertheless exists because of the action taken by him at the request of the defendant, namely, his retirement as a manufacturer's representative, including other manufacturers as well as the defendant, and his turning over to the defendant his personal records pertaining to customers and sales over a period of years in the past. There would be merit in this contention if it was supported by the facts. Farabee-Treadwell Co. v. Union & Planters' Bank & Trust Co., 135 Tenn. 208, 216, 186 S.W. 92, L.R.A.1916F, 501; Meurer Steel Barrel Co., Inc. v. Martin, 1 F.2d 687, C.A.3rd; Messick v. Powell, 314 Ky. 805, 809, 236 S.W.2d 897.

However, these factual contentions of the plaintiff were disputed by the evidence of the defendant. The District Judge made findings of fact that the plaintiff was not required by the terms of the letters, or by any other statements on the part of the defendant, or its agents, to do anything whatsoever; that upon his retirement on July 1, 1955, the plaintiff was free to handle the products of any other manufacturer or competitor if he so desired, to seek other employment, or to do as he pleased; that nothing in the arrangement circumscribed

the plaintiff's actions or rights in any manner; and that the plaintiff was not obligated to perform any duties on behalf of the defendant. These findings are fully supported by the evidence. In fact, they were substantially conceded by the plaintiff in the cross-examination of him as a witness, in which he apparently contended that he did certain things for the defendant after his retirement although he was not required to do so.

On the basis of these facts, the District Judge ruled that the payments to the plaintiff over the period of July 1, 1955, to July 1, 1960, were without consideration, were the result of voluntary action on the part of the defendant, and were mere gratuities terminable by the defendant at will.

■ We concur in the ruling. Combs v. Standard Oil Co., 166 Tenn. 88, 59 S. W.2d 525; Judd v. Wasie, 211 F.2d 826, 832, C.A.8th; Big Cola Corporation v. World Bottling Co., 134 F.2d 718, C.A. 6th; Tennessee Enamel Mfg. Co. v. Stoves, Inc., 192 F.2d 863, C.A.6th, cert. denied, 342 U.S. 946, 72 S.Ct. 561, 96 L.Ed. 704.

Plaintiff further contends that although defendant's promise may not be supported by legal consideration, it is nevertheless enforceable under the doctrine of *promissory* estoppel, which, as explained by the authorities, is different from the well recognized principle of estoppel in pais, based on misrepresentation of fact. Plaintiff relies upon this principle as explained and applied in Ricketts v. Scothorn, 57 Neb. 51, 77 N.W. 365, 42 L.R.A. 794; Sessions v. Southern California Edison Co., 47 Cal.App.2d 611, 118 P.2d 935; and Feinberg v. Pfeiffer Company, (Mo.App.1959) 322 S. W.2d 163.

Promissory estoppel is defined in Restatement, Contracts, Section 90, as follows:

"A promise which the promisor shouud reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

This principle appears to be of somewhat limited application in the United States. Annotation, 48 A.L.R.2d 1069, 1081, 1085. We are not shown that it has ever been recognized or applied as the law of Tennessee. The indications are to the contrary. Barnes v. Boyd, 18 Tenn.App. 55, 72 S.W.2d 573; Comment, 23 Tenn.Law Review, 423. We construe the ruling in Marsh v. State Bank & Trust Co., 153 Tenn. 400 (see page 406), 284 S.W. 380, 48 A.L.R. 1365, relied upon by plaintiff, to be based upon estoppel in pais, rather than upon promissory estoppel.

■ Although there may be other facts in the present case which prevent it from coming within the scope of that definition, we believe that an important fact is that the plaintiff in no way altered his position for the worse by reason of defendant's letters of July 1 and July 20, 1955. The District Judge found as a fact that the plaintiff gave up nothing to which he was legally entitled and was restricted in no way in his activities thereafter. Plaintiff gave up nothing in accepting retirement that he would not have lost if he had refused to accept it. We do not find in the present case the injustice required in order to enforce the alleged promise.

In the Nebraska, California and Missouri cases, referred to above and relied on by the plaintiff, the plaintiff in each case relinquished some right to which he or she was entitled in reliance upon the promise of the defendant. They are not applicable here. See also: Insurance Co. v. Mowry, 96 U.S. 544, 547, 24 L.Ed. 674; Faxton v. Faxon, 28 Mich. 159, 161.

The judgment is affirmed.