I. G. KATZ, an individual,
Plaintiff–Appellant,

v.

DANNY DARE, INC., A Missouri Corporation, Defendant–Respondent.

No. WD 31526.

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Robert E. Rosenwald, Bert H. Jacob, Ronald G. Byers, Rosenwald, Jacob, Bressel, Jacob & Meglemre, Kansas City, for plaintiff-appellant.

W. Perry Brandt and James C. Morgenstern, Stenson, Mag & Fizzell, Kansas City, for defendant-respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

I. G. Katz filed three suits in the Associate Division of the Circuit Court seeking pension payments for three separate time periods alleged to be due from Danny Dare, Inc. Two suits resulted in judgment in favor of Katz, but a request for a trial de novo was filed and those causes were assigned to a circuit judge for trial. The other suit pending in the Associate Division was transferred to the same circuit judge and all the cases were consolidated for trial without a jury. Judgment was entered in favor of Dare in all cases. On this appeal Katz contends the promise of pension payments made to him by Dare is binding under the Doctrine of Promissory Estoppel. Reversed and remanded.

There is little or no dispute as to the facts in this case. Katz began work for Dare in 1950 and continued in that employ until his retirement on June 1, 1975. The president of Dare was Harry Shopmaker, who was also the brother of Katz's wife. Katz worked in a variety of positions including executive vice president, sales manager, and a member of the board of directors, although he was not a member of the board at the time of his retirement. In February 1973, Katz was opening a store, operated by Dare, for business and placed a bag of money on the counter next to the cash register. A man walked in, picked up the bag of money and left. When Katz followed him and attempted to retrieve the money, Katz was struck in the head. He was hospitalized and even though he returned to work he conceded he had some difficulties. His walk was impaired and he suffered some memory loss and was not able to function as he had before. Shopmaker and others testified to many mistakes which Katz made after his return at considerable cost to Dare. Shopmaker reached the decision that he would have to work out some agreeable pension to induce

Katz to retire because he did not feel he could carry Katz as an employee. At that time Katz's earnings were about $23,000 per year.

Shopmaker began discussions with Katz concerning retirement but Katz insisted that he did not want to retire but wanted to continue working. Katz was 65 at the time of his injury and felt he could continue performing useful work for Dare to justify his remaining as an employee. However, Shopmaker persisted in his assessment that Katz was more of a liability than an asset as an employee and continued negotiating with Katz over a period of about 13 months in an effort to reach an agreement by which Katz would retire with a pension from Dare. Shopmaker first offered Katz $10,500 per year as a pension but Katz refused. Thereafter, while Katz was on vacation, Shopmaker sent Katz a letter to demonstrate how Katz could actually wind up with more take–home pay by retiring than he could by continuing as an employee. In the letter Shopmaker proposed an annual pension payable by Dare of $13,000, added the Social Security benefit which Katz and his wife would receive after retirement, and added $2,520 per year which Katz could earn for part-time employment, but not necessarily from Dare, to demonstrate that Katz would actually realize about $1,000 per year more in income by retiring with the Dare pension over what he would realize if he continued his employment. Shopmaker testified that he sent this letter in an effort to persuade Katz to retire.

Katz acceded to the offer of a pension of $13,000 per year for life, and on May 22, 1975, the board of directors of Dare unanimously approved the following resolution:

WHEREAS, I. G. Katz has been a loyal employee of Danny Dare, Inc. and its predecessor companies for more than 25 years; and,

WHEREAS, the said I. G. Katz has requested retirement because of failing health; and,

WHEREAS, it has been the custom in the past for the company to retire all executives having loyally served the company for many years with a remuneration in keeping with the sum received during their last five years of employment;

NOW THEN BE IT RESOLVED, That Danny Dare, Inc. pay to I. G. Katz the sum of $500.00 bi-weekly, or a total of $13,000.00 per year, so long as he shall live.

Katz retired on June 1, 1975, at age 67, and Dare began payment of the pension at the rate of $500 every other week. Katz testified that he would not have retired without the pension and relied on the promise of Dare to pay the pension when he made his decision to retire. Shopmaker testified that at the time the board resolution was passed, the board intended for Katz to rely on the resolution and to retire, but he said Katz would have been fired had he not elected to retire.

In the Fall of 1975, Katz began working for another company on 3 to 4 half–days per week. At the end of that year Shopmaker asked Katz if he could do part-time work for Dare and Katz told him he could work one-half day on Wednesdays. For the next two and one-half years Katz continued to work for Dare one-half day per week.

In July, 1978, Dare sent a semi-monthly check for $250 instead of $500. Katz sent the check back and stated he was entitled to the full $500. Thereafter Dare stopped sending any checks. Shopmaker testified that he cut off the checks to Katz because he felt Katz's health had improved to the point that he could work, as demonstrated by the part-time job he held. Katz testified the decrease was made after Shopmaker told him he would have to work one-half day for five days a week for Dare or his pension would be cut in half. Katz testified, without challenge, that he was not able to work 40 hours per week in 1978 at age 70.

The trial court entered a judgment in which some findings of fact were made. The court found that Katz based his claim on the Doctrine of Promissory Estoppel as applied in *Feinberg v. Pfeiffer Company*, 322 S.W.2d 163 (Mo.App.1959). The court found that Katz was not in the same situa-

tion as Feinberg had been because Katz faced the prospect of being fired if he did not accept the pension offer whereas there was no such evidence in the *Feinberg* case. The court found the pension from Dare did not require Katz to do anything and he was in fact free to work for another company. The court found Katz did not give up anything to which he was legally entitled when he elected to retire. The court found that since Katz had the choice of accepting retirement and a pension or being fired, that it could not be said that he suffered any detriment or significant change of position when he elected to retire. The court further found that it could not find any injustice resulting to Katz because by the time payments had been terminated, he had received about $40,000 plus a paid vacation for his wife and himself to Hawaii. The court found these were benefits he would not have received had he been fired.

Katz contends he falls within the holding in *Feinberg* and Dare contends that because Katz faced the alternative of accepting the pension or being fired that he falls without the holding in *Feinberg*.

At the outset it is interesting to note in view of the argument made by Dare that the court in *Feinberg* stated at p. 165:

> It is clear from the evidence that there was no contract, oral or written, as to plaintiff's length of employment, and that she was free to quit, and the defendant to discharge her, at any time.

In *Feinberg* the board of directors passed a resolution offering Feinberg the opportunity to retire at any time she would elect with retirement pay of $200 per month for life. Feinberg retired about two and one–half years after the resolution was passed and began to receive the retirement pay. The pay continued for about seven years when the company sent a check for $100 per month, which Feinberg refused and thereafter payments were discontinued.

The court observed that Section 90 of the Restatement of the Law of Contracts had been adopted by the Supreme Court in *In Re Jamison's Estate*, 202 S.W.2d 879 (Mo. 1947). The court noted that one of the illustrations under § 90 was strikingly similar to the facts in *Feinberg*. The court applied the Doctrine of Promissory Estoppel, as articulated in § 90, and held that Feinberg had relied upon the promise of the pension when she resigned a paying position and elected to accept a lesser amount in pension. The court held it was immaterial as to whether Feinberg became unable to obtain other employment before or after the company discontinued the pension payment. The court held the reliance by Feinberg was in giving up her job in reliance on the promise of a pension. Her subsequent disability went to the prevention of injustice which is part of the Doctrine of Promissory Estoppel.

■ There are three elements to be satisfied to invoke the Doctrine of Promissory Estoppel. These are: (1) a promise; (2) a detrimental reliance on such promise; and (3) injustice can be avoided only by enforcement of the promise.

■ This court is not convinced that the alternative Shopmaker gave to Katz of either accepting the pension and retiring or be fired takes this case out of the operation of Promissory Estoppel. The fact remains that Katz was not fired, but instead did voluntarily retire, but only after the board of directors had adopted the resolution promising to pay Katz a pension of $13,000 per year for life. Thus, the same facts are present in this case as were present in *Feinberg*. When Katz elected to retire and give up earnings of about $23,000 per year to accept a pension of $13,000 per year, he did so as a result of a promise made by Dare and to his detriment by the loss of $10,000 per year in earnings. It is conceded Dare intended that Katz rely on its promise of a pension and Dare does not contend Katz did not in fact rely on such promise. The fact that the payments continued for about three years and that Katz at age 70 could not work full-time was unquestioned. Thus, the element that injustice can be avoided only by enforcement of the promise is present, because Katz cannot now engage in a full-time job to return to the earnings which he gave up in reliance on the pension.

Dare's argument that the threat of being fired removes this case from the operation of Promissory Estoppel is similar to an argument advanced in *Trexler's Estate*, 27 Pa.Dist. & Co.Rep. 4 (1936), cited with approval in *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938). In *Trexler* the depression had forced General Trexler to decide whether to fire several employees who had been with him for many years or place them on a pension. The General decided to promise them a pension of $50 per month and at his death, the employees filed a claim against his estate for the continuation of the payments. The court observed that the General could have summarily discharged the employees, but was loath to do this without making some provision for their old age. This was shown by the numerous conferences which the General had with his executives in considering each employee's financial situation, age and general status. The court said it was clear that the General wanted to reduce overhead and at the same time wanted to give these faithful employees some protection. The court stated it as an open question of what the General would have done if the men had not accepted his offer of a lifetime pension. The court said it would not speculate on that point but it was sufficient to observe that the men accepted the offer and received the pension. The court applied § 90 of the Restatement and held that under the Doctrine of Promissory Estoppel the estate was bound to continue the payments.

The facts in this case are strikingly similar to *Trexler*. Shopmaker undoubtedly wanted to reduce his overhead by reducing the amount being paid to Katz and it is true that Katz could have been summarily discharged. However, it is also true that Shopmaker refused to fire Katz, but instead patiently negotiated for about 13 months to work out a pension which Katz did agree to accept and voluntarily retired.

While Dare strenuously urges that the threat of firing effectively removed any legitimate choice on the part of Katz, the facts do not bear this out. The fact is that Katz continued in his employment with Dare until he retired and such retirement was voluntary on the part of Katz. Had Shopmaker desired to terminate Katz without any promise of a pension he could have done so and Katz would have had no recourse. However, the fact is that Shopmaker did not discharge Katz but actually made every effort to induce Katz to retire voluntarily on the promise of a pension of $13,000 per year.

Dare appears to have led the trial court into error by relying on *Pitts v. McGraw-Edison Co.*, 329 F.2d 412 (6th Cir. 1964). Pitts was informed that the company had retired him and would pay him a certain percentage of sales thereafter. Thus, the main distinction between this case and *Pitts* is that Pitts did not elect to retire on the promise of any payment, but was simply informed that he had been retired by the company and the company would make payment to him. There was no promise made to Pitts on which he acted to his detriment. In addition, the court was applying the law of Tennessee and the court stated that Tennessee had not adopted § 90 of the Restatement. The court in *Pitts* found that Pitts had not given up anything to which he was legally entitled and was not restricted in any way in his activities after being placed in retirement by his company.

The facts in *Pitts* would not enable Pitts to recover under Promissory Estoppel in Missouri because there was no action taken by Pitts in reliance on a promise. The test to be applied in this case is not whether Katz gave up something to which he was legally entitled, but rather whether Dare made a promise to him on which he acted to his detriment. The legally entitled test could never be met by an employee such as Katz or Feinberg because neither could show any legal obligation on the company to promise a pension. The Doctrine of Promissory Estoppel is designed to protect those to whom a promise is made which is not legally enforcible until the requirements of the doctrine are met. *Pitts* is not applicable either on the facts or the law.

The trial court misapplied the law when it held that Katz was required to show that

he gave up something to which he was legally entitled before he could enforce the promise of a pension made by Dare. The elements of Promissory Estoppel are present: a promise of a pension to Katz, his detrimental reliance thereon, and injustice can only be avoided by enforcing that promise. The judgment is reversed and the case is remanded with directions to enter judgment in all suits in favor of Katz for the amount of unpaid pension.

All concur.