NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0685n.06
Filed: September 21, 2007

Nos.  06-1582
06-1687

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **SPARTON TECHNOLOGY, INC.,** | ) | |
| | ) | |
| *Plaintiff-Appellee/Cross-Appellant*, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **UTIL-LINK, LLC, and** | ) | EASTERN DISTRICT OF MICHIGAN |
| **NATIONAL RURAL** | ) | |
| **TELECOMMUNICATIONS** | ) | |
| **COOPERATIVE,** | ) | |
| | ) | |
| *Defendants-Appellants/Cross-Appellees*. | ) | |

Before:   MARTIN  and McKEAGUE, Circuit Judges; and GREER, District Judge.[*]

GREER, District Judge.  The defendants-appellants/cross-appellees in this breach

of contract/promissory estoppel case appeal from the denial by the district court of their motion for

judgment as a matter of law and new trial after a jury trial. The plaintiff-appellee/cross-appellant

appeals the district court's denial of its post-verdict motions for prejudgment interest and for Rule

11 sanctions.  For the reasons which follow, we AFFIRM in part and REVERSE in part.

_____

[*]   The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

National Rural Telecommunications Cooperative ("NRTC") is a District of Columbia cooperative corporation which acts as a purchasing cooperative for its member rural electric and telephone utilities. Util-Link, LLC ("Util-Link"), a Delaware limited liability company, was a partnership formed to develop and obtain production of "LINKs," automated electric utility meter reading units, which in turn were sold to  NRTC, which then marketed and sold the devices to its member utilities.  NRTC was part owner of Util-Link and provided operating capital to Util-Link. Sparton Technology, Inc. ("Sparton") is a New Mexico corporation engaged in contract manufacturing.  It was stipulated by the parties that Util-Link was, for the purposes of this action, acting as the agent of NRTC.  The district court treated Util-Link and NRTC as a single entity and this Court will do so as well.

In May 1997, Sparton and Util-Link entered into a manufacturing agreement for Sparton to manufacture and Util-Link to purchase 75,000 LINKs.  The LINKs were to be manufactured pursuant to the design and testing specifications provided by Util-Link.  From the outset, the LINK product was beset by serious problems related to various design and manufacturing flaws which led to numerous design changes in the product.  As a result, certain raw materials that had been purchased by Sparton became obsolete and could no longer be utilized in production. Although not on the delivery schedule originally contained in the manufacturing agreement, the

75,000 LINKs were eventually produced and paid for by Util-Link. As a result of the alleged manufacturing defects, NRTC recalled all LINKs to have them examined and repaired as necessary. This recall was ultimately addressed under a "retrofit agreement" entered into between Sparton and NRTC, under which costs were shared.

In late 2000, Sparton and Util-Link began negotiations for a new manufacturing agreement. These negotiations continued for several months without a new agreement being executed. In February 2001, Sparton threatened to cancel advance orders for raw materials if Sparton failed to promptly receive a purchase order for additional LINKs. Util-Link told Sparton repeatedly that it could not issue a purchase order without receiving a corresponding purchase order from NRTC. On February 2, 2001, Util-Link notified Sparton that it had requested a purchase order from NRTC for an additional 35,000 LINKs and, as soon as NRTC's purchase order was received, Util-Link would issue a purchase order to Sparton. Sparton advised Util-Link that advance materials were on order to support this additional production. A host of e-mails and letters were exchanged between March and May 2001, relating to the possible additional purchase of LINKs.

No purchase order was forthcoming after the February 2, 2001, notification and, on March 5, 2001, Sparton again threatened to cancel orders for raw materials needed for additional production. Util-Link responded on March 7, 2001, with an e-mail which stated: "there will be a purchase order released to Sparton to build 15,000 units beyond the original 75,000 unit order." On March 22, 2001, Util-Link issued a purchase order to Sparton for 15,000 LINKs units, though at a different price than had been discussed. The next day, Sparton scheduled delivery of the needed raw

materials for the 15,000 units. Sparton and Util-Link continued to discuss a mutually agreeable price and Sparton indicated it would be willing to reduce the price if more than 15,000 units were purchased. On May 1, 2001, Sparton proposed a price of $109.00 per unit to produce 35,000 additional LINKs units. Util-Link concurred with the proposal through a pair of e-mails on the same day. In one of these e-mails, Util-Link stated: "Util-Link will pay Sparton $109.00/LINK 340-HL delivered under the current purchase order of 15,000 units . . ." Util-Link committed to order such additional units by purchase order to be issued within the next 90 to 150 days.

No purchase order had been received by Sparton by mid-June 2001. Around mid-year, Util-Link determined that it would not be able to continue in business without receiving additional capital contributions from NRTC. NRTC declined to make further capital contributions and, in August, 2001, it was decided that Util-Link would be dissolved and its LINK business merged into NRTC. NRTC then informed Sparton that it did not intend to go forward with purchase of additional LINK units.

Sparton filed suit in the federal district court on September 24, 2002, alleging the following counts: (I ) breach of contract to purchase an additional 35,000 LINK units; (II) breach of the 1997 manufacturing agreement; (III) breach of the retrofit agreement; (IV) promissory estoppel regarding the additional 35,000 LINK units; and (V) equitable estoppel regarding the additional 35,000 LINK units. The promissory estoppel and equitable estoppel claims were stated alternatively, i.e., "[i]n the event that it is determined that there was not a contract for the manufacture of an additional 35,000 "LINK" units as alleged in Count I . . ." (First Amended Complaint, para. 54, 63).

NRTC filed an answer and counter-complaint alleging breach of the manufacturing agreement and the retrofit agreement.

NRTC filed a motion for summary judgment on Counts I and III and partial summary judgment on Counts IV and V shortly thereafter and Sparton moved for summary judgment on the issue of whether a contract between Sparton and Util-Link existed as alleged in Count I of its complaint. On June 25, 2004, Sparton's counsel informed NRTC's counsel that Sparton would stipulate to the dismissal of its promissory and equitable estoppel claims (Counts IV and V). Sparton's agreement was announced to the court on June 30, 2004, at the hearing on the parties' motions for summary judgment. No order was entered, however, as a result of Sparton's stipulation. On September 2, 2004, the district court denied Sparton's motion for summary judgment, and denied in part and granted in part NRTC's motion. Sparton's claims for breach of the retrofit agreement and for promissory and equitable estoppel were dismissed on the merits.

The matter proceeded to trial by a jury in September 2005, on Sparton's claims for breach of contract for the additional 35,000 LINK units and breach of the manufacturing agreement, as well as NRTC's counterclaim. On the fourth day of trial, the district court invited a motion from Sparton to reconsider its prior grant of summary judgment on the estoppel claims, saying it was "embarrassed" by the previous decision. Sparton's motion, opposed by NRTC, was then granted and the estoppel claims were reinstated.

At the conclusion of the trial, which continued sporadically over 16 days, the jury returned a verdict in the case. The jury found that NRTC had breached the 1997 manufacturing

agreement and awarded Sparton $494,644.23 in damages for "obsolete materials." The jury further found that Sparton and NRTC had entered into a contract for the purchase of 35,000 additional LINKs, but determined that NRTC did not breach the agreement and awarded no damages to Sparton. The jury then found for Sparton on the "estoppel claims" and awarded damages of $3,087,043.09. The jury had been instructed by the district court that it must consider the estoppel claims if it did not award damages to Sparton for breach of contract to purchase the additional 35,000 LINK units. Judgment was entered on the jury verdict on November 9, 2005.

NRTC moved for judgment as a matter of law (JMOL) and/or a new trial on grounds, among others, that the jury's finding of an express contract for the purchase of 35,000 additional LINK units precluded the jury's verdict on the estoppel claims and the evidence at trial did not support the damage awards. The district court denied NRTC's motion on the estoppel claims, holding that "[t]here is no need for the Court to involve itself in the esoterica of the right of plaintiff to assert both a contract and an estoppel, whether when there is a contract which binds the parties, a party may not rely on an estoppel. The fact of the matter is that there was not an enforceable contract for 35,000 additional LINKS." The district court did, however, suggest a remittitur in the damage award on the estoppel claims to $1,747,415.94 and to $171,360 on the obsolete materials claim. (Amended Decision On Defendant's Motions For Judgment As A Matter Of Law And New Trial, pp. 8-9). Sparton accepted the proposed remittiturs and an amended judgment was entered on April 5, 2006.

On November 21, 2005, Sparton filed a motion to amend the judgment to include

prejudgment interest. The motion was denied by the district court on January 31, 2006. On November 23, 2005, Sparton filed a motion seeking Rule 11 sanctions against NRTC regarding NRTC's counterclaim. This motion was denied by the district court on February 2, 2006.

NRTC timely filed a notice of appeal from the amended judgment on May 1, 2005. Sparton's notice of cross-appeal from the orders on its motions for prejudgment interest and Rule 11 sanctions was filed on February 2, 2005. For the reasons which follow, we REVERSE the district court's judgment on Sparton's estoppel claims, AFFIRM the district court's judgment on NRTC's counterclaim and AFFIRM the district court's orders on Sparton's motions for prejudgment interest and Rule 11 sanctions.

## II. ANALYSIS

On appeal, NRTC raises the following issues: (i) whether the district court erred in denying NRTC's motion for JMOL because the jury verdict, finding a contract for the sale of an additional 35,000 LINK units, precluded judgment on Sparton's alternative estoppel claims; (ii) whether the estoppel damage award is unsupportable as a matter of law; and (iii) whether the district court erred in not granting judgment as a matter of law on NRTC's counter-claim. Sparton claims: (i) that an award of prejudgment interest is mandatory under Michigan law; and (ii) that the district court abused its discretion in denying Sparton's motion for Rule 11 sanctions. We will address each issue in turn.[1]

---

[1] The jury's verdict with respect to breach of the 1997 "retrofit agreement" and the resulting judgment in favor of Sparton on that issue have not been appealed.

Nos. 06-1582 and 06-1687
*Sparton Technology, Inc. v. Util-Link, LLC*
*and National Rural Telecommunications Cooperative*


## A. Estoppel

A district court's legal conclusions are reviewed *de novo. Hadix v. Johnson*, 182 F.3d 400, 404 (6th Cir. 1999). Likewise, a district court's determination of a motion for judgment as a matter law is reviewed *de novo. Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 788 (6th Cir. 2005). In this diversity case, state law governs a Rule 50(b) motion. *Morales v. American Honda Motor Co., Inc.*, 151 F. 3d 500, 506 (6th Cir. 1998). Under Tennessee law, which the parties have agreed governs this case, in ruling on a motion for judgment as a matter of law (referred to as a directed verdict under *Tenn. R. Civ. Pro.* 50.01), trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tennessee Farmers Mutual Ins. Co.*, 120 S.W. 3d 815, 819 (Tenn. 2003)(citing *Eaton v. McLain*, 891 S.W. 2d 587, 590 (Tenn. 1994)). A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. *Id.*

Sparton described its alternative estoppel claims as both promissory estoppel and equitable estoppel in its complaint. As an initial matter, equitable estoppel is not recognized as a cause of action in Tennessee but rather is an affirmative defense which creates no rights or cause of action but acts to protect rights acquired previously. *Jacobs v. Underhill*, 2003 WL 22955930 at *1 (Tenn. App. 2003) (citing *Alexander v. Armentrout*, 24 S.W. 3d 267, 272 (Tenn. 2000)); see also 21 *Tennessee Practice Series Contract Law and Practice* §11.47 (2006). Count V of Sparton's amended complaint, therefore, does not state a cause of action and should have been dismissed for that reason.

-8-

Some earlier Tennessee decisions, yet to be explicitly overruled, hold that Tennessee does not recognize a claim for promissory estoppel. See *Pitts v. McGraw-Edison Company*, 329 F.2d 412, 416 (6th Cir. 1964) (citing *Barnes v. Boyd*, 18 Tenn. App. 55, 72 S.W.2d 573 (Tenn. App.1934)). Some federal courts sitting in Tennessee, on the other hand, have accepted and applied the doctrine for many years. *See United States For Use of E &R Construction Co., Inc. v. Guy H. James Construction Company*, 390 F. Supp. 1193 (M.D. Tenn. 1972), *aff'd* 489 F.2d 756 (6th Cir. 1974). Despite this confusion, there exists no reasonable question today about whether promissory estoppel is clearly recognized in Tennessee. In 1978, a Tennessee Court of Appeals decision explicitly recognized a remedy on this basis, although the decision relied on out of state precedents. *Foster & Creighton Co. v. Wilson Contracting Company, Inc.*, 579 S.W.2d 422 (Tenn. App. 1978). Finally, however, the Tennessee Supreme Court, after finding it unnecessary to decide the issue as late as 1982, *see Alden v. Presley*, 637 S.W. 2d 862 (Tenn. 1982), unequivocally accepted promissory estoppel as a cause of action in 1991. *Bill Brown Construction Co., Inc. v. Glen Falls Insurance Company*, 818 S.W.2d 1 (Tenn. 1991).

Promissory estoppel in Tennessee is described as:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. App. 1991) (quoting Restatement of Contracts 2d. § 90). "The limits of promissory estoppel are: (1) the detriment suffered in reliance

must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise as made." *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn. App. 1999).

Although Tennessee does recognize a claim of promissory estoppel, it does not liberally apply the doctrine and limits its application to "exceptional cases." *Barnes & Robinson Company, Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637 (Tenn. App. 2006). Such exceptional cases are found only where defendant's conduct is akin to fraud. *Shedd v. Gaylord Entertainment Company*, 118 S.W.3d 695 (Tenn. App. 2003). A promissory estoppel claim is not dependent on the finding of an express contract between the parties, *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn. App. 1997), but the court must first determine whether an enforceable contract exists. *Calabro*, 15 S.W. 3d at 879. Promissory estoppel is an alternative theory to recovery on an express contract. *Operations Management International, Inc. v. Tengasco, Inc.*, 35 F. Supp.2d 1052 (E.D. Tenn. 1999). While cases do exist where the doctrine has been applied where the parties have contracts, these cases have been limited to cases where a claim of promissory estoppel was advanced to expand the terms of, not change the terms of, an existing contract. *Bill Brown*, 818 S.W.2d at 9-11. Where the parties have an enforceable contract, however, and merely dispute its terms, scope or effect, one party cannot obtain recovery based upon promissory estoppel. *Terry Barr Sales Agency, Inc. v. All-Lock Company, Inc.*, 96 F.3d 174 (6th Cir. 1996) (applying Michigan law); *Johnson v. Metropolitan Government of Nashville*, 2002 WL

31769125 (Tenn. App. 2002); *perm. app. denied* May 5, 2003. Once an express contract is found, therefore, the alternative claim of promissory estoppel becomes moot. *Johnson*, 2002 WL 31769125 at *10.

NRTC argues that the jury verdict finding a contract between Sparton and NRTC for the manufacture and sale of 35,000 additional LINKs precluded judgment on the alternative estoppel claim and that the damage verdict is unsupportable as a matter of law. Sparton responds that NRTC waived any argument based on the inconsistency in the jury's finding of both an expressed contract and promissory estoppel, that the trial court eliminated any inconsistency by its ruling that the evidence did not support the jury's finding as to the existence of a contract, and that the jury's verdict was not inconsistent under Tennessee law. We hold that the jury's finding that a contract for the manufacture and purchase of the additional LINKs existed precludes, as a matter of law, a damage award based on promissory estoppel concerning the same subject matter and we reject Sparton's arguments for the reasons which follow.

As to NRTC's alleged waiver of its argument, Sparton argues that NRTC failed to object to the flaws in the jury instruction and verdict form prior to their submission to the jury and thus waived its right to later object. This argument is plainly without merit. The record in this case clearly establishes that NRTC objected numerous times to the inclusion of the promissory estoppel instructions in the jury instructions and did so just prior to submission of the case to the jury. Sparton also argues that NRTC's failure to object to the inconsistent verdict prior to the discharge of the jury constitutes a waiver under Federal Rule of Civil Procedure 49(b). Rule 49(b) is

inapplicable in this case, however, because the verdict, while technically inconsistent because the finding of a contract forecloses an award of estoppel damages on the same subject matter, was consistent with the procedure the jury was instructed to follow in the district court's instructions. If the jury had been correctly instructed that it should not consider the promissory estoppel claim if it first found a contract, the inconsistency would not have occurred. Rather, the jury was instructed to consider the promissory estoppel claim if they did not *award damages* for the breach of any contract found, an instruction which was contrary to Tennessee law. Given the jury instructions, objected to by NRTC, it would have been fruitless for NRTC to seek to have the jury return for further consideration of its answers. We find no merit to this argument.

Sparton next argues that the district court eliminated any inconsistency in the jury verdict through its determination that the jury's verdict as to the existence of a contract was not supported by the evidence. The district court *sua sponte* held in its order on the motion for JMOL and/or new trial that it need not determine whether Sparton could recover on its promissory estoppel claim in the face of the jury's finding of the existence of a contract "because there was not an enforceable contract for 75,000 additional LINKS." Sparton's argument is flawed for several reasons.

It is doubtful, first of all, that the district court could *sua sponte* grant judgment as a matter of law on the contract finding where no party had requested that it do so. *See*, *e.g.*, *American and Foreign Insurance Company v. Bolt*, 106 F.3d 155, 159 (6th Cir. 1997) (holding that "allowing a judge to *sua sponte* raise a new issue post-verdict, and proceed to overturn a jury verdict on that

basis contravenes the dictates of Rule 50(b)"). Even if the district court could do so, nothing suggests that the district court applied the appropriate standard in reaching its decision; that is, taking the strongest legitimate view of the evidence in favor of the existence of the contract finding (a position Sparton had pursued throughout the litigation as its primary claim), allowing all reasonable inferences to be drawn therefrom, discarding all countervailing evidence, and denying the motion if there is any doubt as to the conclusion to be drawn from the whole evidence.

In addition, when the proof is viewed under the correct standard, the strongest legitimate view of the evidence supports the finding of the existence of a contract. Whether the district court, or this Court, would have found the existence of a contract as the trier of fact is irrelevant. It goes without saying that neither the district court nor this Court may substitute its own findings for those of the jury and thus disregard a jury verdict, except when the jury's verdict is against the clear weight of the evidence. A jury's verdict that could have reasonably been reached should be left undisturbed. *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982). As the facts set forth above illustrate, the district court improperly set aside the contract finding. As the district court noted in its order denying Sparton's motion for summary judgment on the contract issue, "[a] finder of fact could conclude, based on the series of communications, that a firm contract for 35,000 LINK units was agreed upon by the parties... This is a determination for a finder of fact." (District Court's Memorandum and Order at 17). Hence, the breach of contract claim was tried to the jury which, on consideration of the fully developed record, determined that there was indeed a contract between the parties governing the 35,000 LINK units, a contract however, which NRTC was found not to have

breached.

Sparton lastly argues that Tennessee law permits recovery on both breach of contract and promissory estoppel claims. As set forth above, a recovery for promissory estoppel, where the parties have an enforceable contract, is limited to situations where promissory estoppel applies to matters outside the terms or scope of the existing contract. Sparton has cited no case which permits a recovery on a promissory estoppel theory where the dispute involves the terms of an express contract. While Sparton claims that NRTC has failed to present a Tennessee case standing for the proposition that estoppel and breach of contract claims are mutually exclusive, none of the cases cited by Sparton permit such a dual recovery. Importantly, however, Sparton's own pleadings illustrate the lack of merit in Sparton's position. The estoppel claims were presented in Sparton's complaint as <u>alternative</u> claims, upon which recovery could be had "[i]n the event that it is determined that there was not a contract between the parties for the manufacture of an additional 35,000 "LINK" units." Moreover, Sparton acknowledged, in a pleading filed on September 10, 2004, the alternative nature of its claims and said: "the plaintiff could prevail on either the contract claim or the estoppel claims at trial, not both." Sparton also acknowledged that it had dismissed the estoppel claims because "it was determined that the prosecution of the remainder of the case would be stronger and more focused, without the necessity of proceeding with those counts." (Sparton's Brief at 15). Furthermore, a review of Counts I and IV of Sparton's first amended complaint indicates that both counts deal with the same terms and scope and, in fact, seek damages in identical amounts for identical alleged losses.

We conclude, therefore, that the district court should have granted JMOL on NRTC's motion and the judgment in favor of Sparton on its promissory estoppel claim in the amount of $1,747,415.94 must be reversed and vacated. As a result of our holding, we need not address the other grounds upon which NRTC attacks the promissory estoppel judgment.

**B. Breach of the 1997 Manufacturing Agreement**

In its counter-complaint, NRTC alleges a breach by Sparton of the 1997 manufacturing agreement and specifically alleges that Sparton failed to produce LINKS units in a workmanlike manner. NRTC argues on appeal that "[t]he evidence conclusively established that there were manufacturing defects" in the LINK units manufactured by Sparton, in violation of § 7.1 of the manufacturing agreement. NRTC cites testimony from Sparton personnel admitting that certain manufacturing defects existed relating to the LINK units. Sparton, on the other hand, points to testimony in the record which characterized the defects as minor and occurring in only a small number of the units produced. There was also testimony that some of the defects were design defects which were the responsibility of Util-Link, as well as testimony that Sparton cured all of the referenced manufacturing defects by repairing or replacing the LINK units returned to it.

Our standard of review on this issue is the same as the standard of review applied on Sparton's estoppel claims. We review the district court's determination of a motion for judgment as a matter of law *de novo,* as set forth above. A court should grant the motion only if reasonable minds could reach only one conclusion from the evidence. We agree with the district court that there is no need for any extended discussion on this issue. Even a cursory review of the record in this case

establishes conflicting evidence on this issue which the jury reasonably resolved in favor of Sparton.

We cannot say, as a matter of law, that reasonable minds could draw but one conclusion from the

evidence on this issue and we, therefore, affirm the district court on this issue.

**C. Prejudgment interest**

On November 21, 2005, Sparton filed a motion to amend judgment seeking an award

of prejudgment interest on the $3,581,687.32 damages award.[2] While acknowledging the parties'

agreement to apply Tennessee law in this case, Sparton, in its motion, asserted that Michigan law

should be applied on the issue and "that the court can allow such interest." Sparton also argued,

however, that, if NRTC were to argue that Tennessee law should be applied to the question of

prejudgment interest, then Tennessee law provides for such interest. (Brief in Support of Motion

to Amend Judgment at 3). NRTC responded that the court should exercise its discretion to deny the

request for prejudgment interest. Relying on Michigan law, the district court denied the motion

based upon its asserted discretion to do so.

Sparton now argues that an award of prejudgment interest is mandatory under

Michigan law and argues that NRTC waived the right to argue that Tennessee law applies by not

explicitly so asserting in its reply to Sparton's motion in the district court. We disagree with Sparton

for a simple reason. Throughout this litigation, the parties agreed to apply Tennessee law. The only

reason advanced by Sparton for applying Michigan law is that NRTC allegedly waived its right to

---

[2] As set forth above, this damages award was later reduced to $ 1,918,775.94 when Sparton agreed to the suggested remittitur by the district court.

insist that Sparton be held to its agreement by not explicitly objecting to Sparton's claim in its reply to Sparton's motion. We find such an argument to be unpersuasive We see no good reason not to enforce the parties' agreement and apply Tennessee law.

Under Tennessee law, prejudgment interest is authorized by T.C.A. § 47-14-123, but is not allowed as a matter of right on unliquidated claims for damages, and its allowance is within the sound discretion of the trial judge, *B.F. Myers & Son v. Evans*, 612 S.W.2d 912 (Tenn. App. 1980). The district court's decision to deny prejudgment interest will not be reversed absent a "manifest and palpable" abuse of discretion. *Otis v. Cambridge Mut. Ins. Co.,* 850 S.W.2d 439 (Tenn 1992). Sparton does not argue that there is an abuse of discretion and we find none from the record in this case. We therefore affirm the district court's denial of Sparton's motion.

**D. Rule 11 sanctions**

On November 23, 2005, Sparton moved for sanctions pursuant to Federal Rule of Civil Procedure 11 regarding NRTC's counterclaim. The district court denied the motion by order entered on February 2, 2006. In denying the motion, the district court noted that plaintiff's brief contained only a brief discussion regarding the lack of merit of the counterclaim and the speculative evidence of damages introduced by defendants at trial. Sparton made no reference to the court's decision on Sparton's motion for summary judgment nor did it make any reference to the testimony or exhibits at the 16-day trial which led to the jury's verdict.

We review the district court's determination on the motion for Rule 11 sanctions

under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2460-61, 110 L. Ed.2d 359 (1990). "An abuse of discretion will not be found unless we have a definite and firm conviction that the trial court committed a clear error of judgment." *Friedler v. Equitable Life Assurance Society*, 86 Fed. Appx. 50 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003)) (internal quotations marks omitted).

The district court noted that "Sparton has not taken the time or put forth the effort to persuade the court" to conclude that NRTC's claim was frivolous and that Rule 11 sanctions should be imposed. Sparton has not done so in this court either. Sparton's brief contains sweeping conclusory statements concerning the lack of merit of the NRTC counterclaim but has made no effort to address the deficiencies noted by the district court in its argument. In fact, Sparton completely ignores the district court's decision on Sparton's motion for summary judgment on the counterclaim and does not cite a single reference to the transcript of the 16-day trial. Under these circumstances, we find no abuse of discretion and affirm the district court.

## CONCLUSION

For all the reasons set forth above, we **REVERSE** the judgment of the district court on Sparton's estoppel claims and **REMAND** for entry of judgment in favor of NRTC on Sparton's Count IV and V estoppel claims. We also **AFFIRM** the district court's denial of NRTC's motion for judgment as a matter of law on its counterclaim and **AFFIRM** the district court's orders on Sparton's motions for prejudgment interest and Rule 11 sanctions.