IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 25, 2017 Session

## DANNY JONES, ET AL. v. BAC HOME LOANS SERVICING, LP, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-12-0817     James R. Newsom, Chancellor**

————————————————————

**No. W2016-00717-COA-R3-CV**

————————————————————

The Plaintiffs' home was sold at foreclosure in May 2011. By way of a suit filed in the Shelby County Chancery Court, the Plaintiffs sought rescission of the foreclosure sale and asserted claims for breach of contract, violation of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, promissory estoppel, and negligent misrepresentation. The trial court dismissed these claims following the filing of a motion for summary judgment by the Defendants. Discerning no error based on our review of the record, we affirm the action of the trial court for the reasons expressed herein.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Webb A. Brewer and Allison S. Raines, Memphis, Tennessee, for the appellants, Danny Jones and DeEtta Jones.

Lauren Paxton Roberts, Memphis, Tennessee, for the appellees, BAC Homes Loans Servicing, LP, and Wells Fargo Bank, N.A.

**OPINION**

**Background and Procedural History**

In March 2004, Danny and DeEtta Jones obtained a $180,000.00 loan from Decision One Mortgage Company, LLC in order to purchase a home in Germantown, Tennessee. The subject note was a three-year adjustable rate mortgage, and initial monthly payments were set at $1,240.15. Contemporaneous with the loan transaction,

the Joneses executed a deed of trust granting Mortgage Electronic Registration Systems, Inc., as nominee for Decision One Mortgage Company, LLC, its successors and assigns, a security interest in the acquired Germantown property. There is no dispute that the note and deed of trust are valid and enforceable contracts.

Subsequent to the execution of the loan, servicing rights were acquired by Bank of America, N.A. ("BANA"),[1] and in 2009, the Joneses began to get behind on their regular loan payments. Although they sought a loan modification from BANA, it is undisputed that no BANA representative stated to the Joneses that they would qualify for a loan modification. Moreover, in December 2010, BANA sent a letter to the Joneses informing them that they were not eligible for a loan modification under the Home Affordable Modification Program ("HAMP"). Specifically, the Joneses were denied a HAMP loan modification because their monthly housing expense was less than or equal to 31% of their gross monthly income.

Although a "Notice of Intent to Accelerate" was sent to the Joneses in November 2010 informing them that they could cure their default by making a payment in the sum of $7,006.48 by December 17, 2010, the Joneses failed to take this action. Instead, they submitted two payments totaling $3,313.26 on December 14, 2010. No further payments were made on the loan.

On April 19, 2011, the Joneses received a notice of foreclosure from BANA indicating that a foreclosure sale was scheduled to take place in May 2011. The notice sent to the Joneses indicated that they were in arrears in the amount of $9,000.00. Although there is no dispute that the Joneses were incapable of paying the $9,000.00 delinquency on the date they received the notice of foreclosure, Mr. Jones claims that he spoke to a BANA representative on April 19, whereupon he offered to pay $7,800.00 that day and the remaining balance by the end of the week. Mr. Jones further claims that, notwithstanding his offer, the BANA representative informed him that if he sent a payment of $6,000.00, he would qualify for a six-month repayment plan that would stop the foreclosure sale. The BANA representative also allegedly informed Mr. Jones that he could possibly qualify for a one-year repayment plan if additional authorization was secured. In accordance with these alleged representations, Mr. Jones asserts that he went to Western Union on April 19 to send $6,000.00 to BANA. He claims that he attempted to send this sum by two separate transfer payments, one in the amount of $1,000.00, the

---

[1] It appears that many of the actions in this case technically involved BAC Home Loans Servicing, LP ("BAC"). However, we note that BANA is successor by merger to BAC and also observe that the parties' summary judgment filings often refer to pre-merger activities as specifically involving BANA. For example, at summary judgment, there was no dispute as to the statement that "BANA was the servicer of the Loan prior to the foreclosure sale." For purposes of consistency, we will also reference the BANA entity herein, who is the successor by merger to BAC, even if the specific actions complained of directly involved BAC.

other in the amount of $5,000.00. According to Mr. Jones, however, he later learned that his transfer payments had been declined.

Despite the asserted representations made by the BANA representative, it is undisputed that there is no writing that evidences an agreement to enter into a repayment plan/postpone foreclosure. On May 6, 2011, the Joneses' Germantown property was sold at foreclosure to Wells Fargo Bank, N.A. ("Wells Fargo"), for the sum of $177,008.05. This litigation subsequently ensued.

On May 14, 2012, the Joneses filed a petition in the Shelby County Chancery Court to set the foreclosure sale aside. The suit was brought against BANA,[2] Wilson & Associates, PLLC, and Wells Fargo, the last of which was alleged to have acquired the underlying loan following its origination with Decision One Mortgage Company, LLC.[3] Wilson and Associates, PLLC would eventually be dismissed from the case pursuant to an agreed order.

Following the filing of the petition, the Chancery Court entered a temporary restraining order preventing the Defendants and any of their agents from proceeding with an eviction regarding the property. A few months thereafter, on July 16, 2012, a consent order was entered enjoining the Defendants from attempting to evict the Joneses as long as the Joneses made timely payments into the Court as rent. The order specified that the Joneses would have a grace period such that "any monthly payment made between the 15th and 30th day of that respective month will be deemed to be timely made."

On September 24, 2012, the Joneses filed an amended petition asserting various claims for relief. In addition to seeking rescission of the foreclosure sale, the amended petition alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, promissory estoppel, and negligent misrepresentation. BANA and Wells Fargo filed their respective answers to the amended petition on November 12, 2012. Therein, both Defendants denied that the Joneses were entitled to any of the relief sought.

On July 29, 2015, BANA and Wells Fargo collectively filed a motion for summary judgment. The motion was supported by a memorandum of law and a statement of undisputed material facts. On October 20, 2015, the Joneses responded to

---

[2] The Joneses did not specifically name BANA, but instead nominally sued BAC. As we have already noted, BANA is successor by merger to BAC. BANA has defended this lawsuit as the "successor to the entity assumed to be named in the Complaint."

[3] Wells Fargo maintained in the trial court that it was improperly named as a Defendant. Precisely, it contended as follows: "Wells Fargo Bank, N.A. did not foreclose on the Property. Rather Wells Fargo Bank, N.A. as trustee on behalf of the Certificateholders of Securitized Asset Backed Receivables LLC Trust 2004-D01, Mortgage Pass Through Certificates Series 2004-D01 was the foreclosing entity."

BANA and Wells Fargo's summary judgment motion and statement of undisputed material facts and filed their own statement of additional undisputed material facts. BANA and Wells Fargo responded to the Joneses' separate statement of undisputed material facts on October 23, 2015.

A hearing on the motion for summary judgment was held on October 28, 2015. On February 29, 2016, the Chancery Court entered an order granting the Defendants summary judgment with respect to all of the claims asserted against them. An amended final order was entered soon thereafter on March 2, 2016. In addition to restating the prior rulings from the February 29 order, the March 2 order specifically denied "[a]ny claims, motions or outstanding issue[s] not specifically addressed in the Court's prior orders." The Joneses then timely appealed, leading to our present review.[4]

## Issues Presented

In their appellate brief, the Joneses raise six issues for our review, which we reword as follows:

1. Whether the Statute of Frauds justifies summary judgment on the breach of contract claim.

2. Whether BANA's breach of an agreement to cancel a foreclosure sale constituted a breach of the covenant of good faith and fair dealing that attaches to all Tennessee contracts.

3. Whether summary judgment was appropriate with respect to the Tennessee Consumer Protection Act claim.

4. Whether summary judgment was appropriate with respect to the promissory estoppel claim.

5. Whether summary judgment was appropriate with respect to the negligent misrepresentation claim.

6. Whether the trial court erred in granting summary judgment with respect to the prayer for rescission.

---

[4] We note that subsequent to the filing of the appeal, a consent order was entered by the Chancery Court staying any attempt by the Defendants to take possession of the property. The stay was conditioned on the Joneses' payment of $1250.00 per month to the Chancery Court's registry pending appeal.

## Standard of Review

At issue on appeal is the propriety of the trial court's March 2, 2016 summary judgment order. Because this inquiry involves "purely a question of law," *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000), our standard of review is de novo, and we afford no presumption of correctness to the trial court's determination. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008) (citations omitted). In ascertaining whether a grant of summary judgment was proper, we are required to make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). Pursuant to that rule, a motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"The moving party has the ultimate burden of persuading the court that . . . there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014) (citation omitted). If the moving party does not meet its initial burden of production, the nonmoving party's burden is not triggered and the motion for summary judgment fails. *Id.* at 578-79 (citation omitted). However, if the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Id.* at 578. (citation omitted).

The Tennessee Supreme Court has recently signaled that the proper framework for evaluating summary judgment orders is found in its decision in *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015). *See Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water and Wastewater Treatment Auth.*, 494 S.W.3d 31, 39-40 (Tenn. 2016) (noting that although the trial court considered the motion for summary judgment pursuant to the standard set forth in Tennessee Code Annotated section 20-16-101 because the lawsuit had been filed after July 2011, the *Rye* standards applied); *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 896 (Tenn. 2016) (noting that the *Rye* standards do, in fact, apply to cases commenced after July 1, 2011). Consequently, our review is guided by the following standards:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party

seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original).

## Discussion

Upon submission of the parties' briefs in this appeal, oral arguments were scheduled for April 25, 2017. While reviewing the record in preparation for this date, we observed that the parties had referenced the existence of an unlawful detainer action filed by Wells Fargo prior to the commencement of this litigation. Based on the representations that were included in the record, it appeared the unlawful detainer action had initially been filed in the Shelby County General Sessions Court and was pending on appeal in the Shelby County Circuit Court. In light of the fact that wrongful foreclosure

- 6 -

is an affirmative defense that can be raised in response to an unlawful detainer action, *see, e.g.*, *Foster v. Fed. Nat'l Mortg. Ass'n.*, No. E2012-02346-COA-R3-CV, 2013 WL 3961193, at *3-4 (Tenn. Ct. App. July 31, 2013), we questioned whether our jurisdiction in this case might be absent on account of the prior suit pending doctrine. We raised this matter when the parties appeared for oral arguments, and on April 27, 2017, we entered an order directing the parties to inquire into the status of the unlawful detainer action and submit supplemental briefs regarding the potential applicability of the prior suit pending doctrine.

On May 10, 2017, the parties filed a joint stipulation in this Court regarding the status of the unlawful detainer action. The stipulation reflected that the Circuit Court appeal had been dismissed for lack of prosecution in June 2015. Supplemental briefs were later filed pursuant to this Court's instructions.

*Parties' supplemental briefs*

In light of their previously-filed stipulation, both sides concede in their supplemental briefs that the prior suit pending doctrine does not apply to bar the maintenance of this case.[5] According to the Joneses, however, the unlawful detainer action is not irrelevant to our review herein. In their supplemental brief, they observe that Wells Fargo did not obtain possession in the General Sessions Court. Further, they note that when the Circuit Court appeal was dismissed in June 2015 for lack of prosecution, this resulted in a reinstatement of the General Sessions judgment. According to the Joneses, this "should have a *res judicata* effect on the issue of the validity of the foreclosure sale."

As we perceive their argument, the Joneses are in effect advocating for an offensive use of the collateral estoppel doctrine. "Collateral estoppel is an issue-preclusion doctrine developed by the courts." *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (citations omitted). Among other things, it aims to promote consistency and conserve judicial resources. *Id.* (citation omitted). In Tennessee, the doctrine may be used offensively, as well as defensively. *Id.* at 114 (citation omitted). Offensive use of the doctrine occurs when a plaintiff attempts to "prevent a defendant from relitigating an issue that the defendant has previously litigated and lost." *Id.* at 108 (citation omitted). In order to prevail on a collateral estoppel claim, the party invoking estoppel must demonstrate the following:

> (1) that the issue to be precluded is identical to an issue decided in an
> earlier proceeding, (2) that the issue to be precluded was actually raised,

---

[5] We agree that the prior suit pending doctrine poses no jurisdictional bar in this case given the dismissal of the Circuit Court appeal in June 2015. We express no opinion herein as to whether the doctrine might have otherwise applied.

litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citation omitted).

In this case, it appears that the Joneses did not advance a preclusion claim until they filed their supplemental brief on appeal. As a general matter, we note that issues not raised in the trial court are waived. *See, e.g.*, *Denver Area Meat Cutters and Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006) (citation omitted). In any event, we note that there is no proof in this record to support the fact that the merits of the foreclosure were actually litigated or decided in the unlawful detainer action. Indeed, although it appears from the record that Wells Fargo did not obtain possession in General Sessions Court through its unlawful detainer action, there has been no proof submitted as to what actually occurred in that case. All we can discern from the record is that Wells Fargo did not obtain possession of the property and thereafter appealed to Circuit Court. Of course, the Circuit Court appeal was eventually dismissed for lack of prosecution. There is simply no indication that Wells Fargo was denied possession in General Sessions Court as a result of a finding that the foreclosure sale was improper. For all we know, Wells Fargo was perhaps denied possession on some ground not pertaining to the merits. Absent proof in this record that the actual merits of the foreclosure were already decided, there is no basis for holding that the invalidity of the foreclosure has been conclusively determined so as to preclude inquiry into that issue for purposes of the present lawsuit. Again, collateral estoppel, as well as res judicata, "apply only if the prior judgment concludes the rights of the parties on the merits." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (citation omitted); *see also Lewis v. Muchmore*, 26 S.W.3d 632, 637 (Tenn. Ct. App. 2000) (citation omitted) ("We find no evidence in the record why the first general sessions court ruled as it did in the prior FED proceedings and whether or not it was decided on the merits or dismissed because of a procedural defect. The burden is on the party raising the defense of *res judicata* to substantiate this defense.").

There is no reason to entertain the Joneses' preclusion argument any further given the lack of proof that the merits of the foreclosure were judicially determined prior to the present litigation. In this vein, we note that even the Joneses' supplemental brief fails to speak with any certainty as to what occurred in the General Sessions Court. Although a few conclusory statements are made to the effect that the General Sessions judgment was "on the merits," the Joneses' supplemental brief ultimately relies on conjecture. In relevant part, the following argument is included: "The General Sessions Court . . . *apparently* found that Wells Fargo wrongfully foreclosed, and thus, there was not a valid

sale of the Joneses' property. It was *apparently* found that Wells Fargo was not entitled to possession of the Joneses' home because no tenancy was created." (emphases added). Mere speculation will not suffice. Proof of a determination on the merits is needed in order to establish that a prior judgment should be given a preclusive effect. Given the Joneses' failure to marshal such proof in this case, we must reject their claim for issue preclusion. We therefore proceed to review the merits of the trial court's March 2, 2016 summary judgment order without reference to the unlawful detainer litigation.

### *Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing*

We begin our review of the trial court's summary judgment order by looking at its dismissal of the Joneses' breach of contract claim. Through their breach of contract claim, the Joneses seek to enforce an agreement under which their payment of $6,000.00 to BANA would (a) cancel the foreclosure sale and (b) entitle them to a payment plan to pay the remaining deficiency. It is well-settled that a breach of contract claim cannot be successfully maintained without first establishing the existence of an enforceable contract. *See, e.g., C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citation omitted). In this case, we agree with the trial court that there is no enforceable agreement in light of the application of the Statute of Frauds.

The note and deed of trust at issue in this case are both subject to the Statute of Frauds so as to require a writing, as is the supposed agreement modifying them that the Joneses seek to enforce. Indeed, a deed of trust is considered a "'conveyance of an estate or an interest in land . . . within the meaning of the Statute of Frauds,'" *L.J. Jackson v. CitiMortgage, Inc.*, No. W2016-00701-COA-R3-CV, 2017 WL 2365007, at * 5 (Tenn. Ct. App. May 31, 2017) (quoting *Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 772-73 (Tenn. 1972)), *no perm. app. filed*, and under Tennessee Code Annotated section 29-2-101, the General Assembly has expressly provided that:

> No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.

Tenn. Code Ann. § 29-2-101(b)(1).[6]

---

[6] The statute does provide an exception whereby a promise does not need to be signed by a lender if the promise is in the form of a note or other writing that describes the loan and by its terms is "intended by the parties to be signed by the debtor but not by the lender or creditor," "[h]as actually been signed by the

Although the Joneses maintain that the agreement they seek to enforce does not involve a loan modification, we cannot agree. According to the Joneses, a payment of $6,000.00 to BANA would qualify them for a six-month repayment plan that would stop the foreclosure sale.[7] By its very nature, therefore, the agreement involves a modification as to when certain payment obligations under the note are due. As such, it is required to be "in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor." Tenn. Code Ann. § 29-2-101(b)(1). Additionally, we note that case law supports the proposition that a promise to postpone foreclosure would be required to be in writing. *See L.J. Jackson*, 2017 WL 2365007, at *7 (noting that a promise to postpone foreclosure would constitute modifying the literal terms of the deed which provided CitiMortgage, Inc. the right to accelerate the debt and proceed with foreclosure); *see also Gibson v. Mortg. Elec. Registration Sys., Inc.*, 23 F.Supp.3d 895, 912 (W.D. Tenn. 2014) ("For purposes of Tennessee's statute of frauds, GMAC's oral promise to cancel the sale was arguably a promise 'to alter, amend, renew, extend or otherwise modify or supplement' the terms of the agreement between Plaintiffs and Defendant GMAC because the promise concerned Plaintiffs' request to modify their loan.").

Despite the Joneses' insistence that the Statute of Frauds does not apply, the agreement they seek to enforce clearly would alter their payment obligations. Indeed, while the Joneses' brief asserts that they "are not claiming that their loan was modified orally," this statement does not withstand scrutiny. Even the Joneses ultimately acknowledge that the parties' rights under the loan documents would be altered pursuant to the claimed agreement when they state as follows in their appellate brief: "[The Joneses seek] only to cancel a sale in exchange for their payment of $6,000.00 and execute an agreement to catch up the rest over a six or twelve-month period. . . . The terms of the Note or Deed of Trust *would not otherwise* be changed." (emphasis added)

The claimed agreement between the Joneses and BANA is subject to the Statute of Frauds, and yet there is no writing evidencing it. The Defendants conclusively established the absence of a writing at summary judgment by setting forth the following two statements of fact, both of which were undisputed by the Joneses:

13. No written contract or any other form of writing exists signed by BANA or by Plaintiffs setting forth an agreement to postpone the scheduled

---

debtor," and "[d]elivery [of the writing] has been accepted by the lender or creditor." Tenn. Code Ann. § 29-2-101(b)(2). This exception clearly does not apply in this case inasmuch as the undisputed facts at summary judgment established that *no* writing existed pertaining to the claimed agreement.

[7] Although the Joneses alleged they were promised that they would qualify for a six-month repayment period, they also claimed Mr. Jones was informed that they might qualify for a one-year repayment period provided additional authorization was secured.

- 10 -

foreclosure sale and enter Plaintiffs into a repayment plan in consideration
of Plaintiffs' payment of $6,000.00 to BANA.

14. The only written contracts that exist between Plaintiffs and BANA are
the Note and Deed of Trust.

Because the breach of contract claim cannot be maintained in the absence of a writing evidencing the alleged agreement and there is no dispute of fact regarding the non-existence of such a writing, we find no error in the trial court's decision to dismiss the Joneses' contract claim.

We note that in connection with their breach of contract claim, the Joneses also specifically asserted that BANA breached the covenant of good faith and fair dealing. According to the Joneses, the covenant was violated when BANA breached its agreement to cancel the foreclosure sale. Under Tennessee law, it is "firmly established that the implied covenant of good faith and fair dealing is imposed in the performance and enforcement of every contract." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 668 (Tenn. 2013) (citation omitted). A claim based on the violation of the covenant is not a stand-alone claim but is instead part of an overall breach of contract claim. *Cadence Bank, N.A. v. Alpha Trust*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (citation omitted). As such, it is clear that the covenant does not provide an independent basis for relief. *Berry v. Mortg. Elec. Registration Sys.*, No. W2013-00474-COA-R3-CV, 2013 WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013) (citation omitted).

We have already discussed how the alleged oral agreement between Mr. Jones and the BANA representative does not constitute a valid and enforceable contract. Accordingly, any basis for a breach of the implied covenant of good faith and fair dealing must stem from the original loan documents. Here, we must conclude that the non-cancellation of the foreclosure sale does not give rise to a violation of the covenant. Indeed, it should be emphasized that the "duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996) (citation omitted). Moreover, it cannot be used to create new contractual rights or obligations or circumvent specific terms of the parties' agreement. *Dick Broad. Co.*, 395 S.W.3d at 666 (citation omitted). Instead, it merely operates to protect the parties' rights to receive the benefits of their agreement. *Id.* (citation omitted).

BANA was not required under the original loan documents to delay foreclosure or accept delayed payments in the manner called for by the alleged oral agreement. The note provided that loan payments were due monthly, and the deed of trust specifically provided the lender with the ability to accelerate payments and invoke a power of sale when a default was not cured. There was simply no requirement or expectation that the Joneses would be accommodated as alleged in the claimed oral agreement between Mr.

Jones and the BANA representative. Indeed, were we to hold that the non-cancellation of the foreclosure constituted a violation of the covenant of good faith and fair dealing, we would in effect be altering the rights and obligations of the parties pursuant to the original loan documents. Such a result would lack legal merit. Again, although the covenant of good faith and fair dealing can be used to protect the parties' rights, it is not a vehicle for circumventing or altering defined rights and obligations. *Id.* As such, we conclude that there is no genuine issue of material fact requiring trial with respect to an alleged violation of the covenant of good faith and fair dealing. That specific claim was properly dismissed in connection with the trial court's dismissal of the Joneses' breach of contract count.

*Tennessee Consumer Protection Act*

We next examine the trial court's dismissal of the Joneses' claim under the Tennessee Consumer Protection Act ("TCPA"). The TCPA "creates a cause of action for '[a]ny person who suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice.'" *Davis v. McGuigan*, 325 S.W.3d 149, 161 (Tenn. 2010) (quoting Tenn. Code Ann. § 47-18-109(a)(1) (2001)). Although the TCPA authorizes trial courts to award treble damages for "willful or knowing" violations, Tenn. Code Ann. § 47-18-109(a)(3), no recovery is available unless a plaintiff first proves (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citation omitted). Further, we note that the predicate unfair or deceptive act "must affect trade or commerce, as defined by the Act," in order for the TCPA to apply. *Davenport v. Bates*, No. M2005-02052-COA-R3-CV, 2006 WL 3627875, at *17 (Tenn. Ct. App. Dec. 12, 2006). By statute, "trade" and "commerce" mean "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47-18-103(19). As these terms are "specifically defined to limit the [TCPA's] application," it is clear that the parameters of the TCPA "do not extend to every action of every business in the State." *Pursell v. First Amer. Nat'l Bank*, 937 S.W.2d 838, 841 (Tenn. 1996).

As argued in their appellate brief, the Joneses' TCPA claim is predicated on the fact that foreclosure took place despite the alleged promise to forbear made by a BANA representative.[8] In dismissing this TCPA claim at summary judgment, the trial court

---

[8] We note that the Joneses' amended petition asserted other allegedly unfair and deceptive acts, including the Defendants' "failure to advise the Plaintiff of his eligibility for relief through the settlement agreement between BOA and the Tennessee Attorney General." In their brief, however, the Joneses tie their TCPA claim to the alleged promise to forbear made by the BANA representative. No argument is presented as to why any of the other unfair and deceptive acts alleged in the trial court were improperly rejected as a predicate for a TCPA claim. To the extent that the argument section of the Joneses' brief focuses

concluded that the alleged conduct did not fall within the ambit of the TCPA. In relevant part, its order stated as follows:

> To the extent that Plaintiffs' TCPA claim is based upon alleged deceptive conduct in the debt collection and foreclosure process, Defendants have demonstrated to the court that Plaintiffs' evidence is insufficient to establish an essential element of Plaintiffs' claim. As it is conceded by Plaintiffs that their claim is based in part upon alleged deceptive conduct in the debt collection and foreclosure process, viewing the facts in the light most favorable to Plaintiffs, Plaintiffs are unable to set forth specific facts that show that there is a genuine issue for trial.

We hereby affirm the trial court's decision given the nature of the allegations underpinning the Joneses' TCPA claim. Indeed, this Court has previously held that "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings." *Paczko v. Suntrust Mortgs., Inc.*, No. M2011-02528-COA-R3-CV, 2012 WL 4450896, at *2 (Tenn. Ct. App. Sept. 25, 2012) (citations omitted); *see also Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *7 (W.D. Tenn. July 2, 2013) (citations omitted) ("[C]ourts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA."); *Peoples v. Bank of Am.*, No. 11-2863-STA, 2012 WL 601777, at *9 (W.D. Tenn. Feb. 22, 2012) (holding that the plaintiff failed to state a claim under the TCPA for the manner in which the defendants negotiated a forbearance agreement).

### *Promissory Estoppel*

We turn next to the Joneses' claim for promissory estoppel. A claim for promissory estoppel is predicated on a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third party. *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (citation omitted). Specifically, the claim will apply when such a promise does induce the expected action or forbearance and injustice can be avoided only by enforcement of the promise. *Id.* (citation omitted). In Tennessee, the doctrine of promissory estoppel is not applied liberally. *Id.* Because promissory estoppel is an equitable doctrine, "its limits are defined by equity and reason." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). In order to succeed on a claim of promissory estoppel, plaintiffs are required to establish the following elements: "(1) that a promise was made; (2) that the promise was unambiguous

---

exclusively on the alleged promise to forbear, we hold that any potential arguments concerning other bases for TCPA liability are waived. *See Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Id.* (citations omitted). The key element, of course, is the promise. *Id.* at 405 (citation omitted).

A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *EnGenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn. Ct. App. 1997) (citations omitted). In fact, as a general matter, the theory of recovery is not viable when a valid contract exists. *See Asbury v. Lagonia-Sherman, LLC*, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at *5 (Tenn. Ct. App. Oct. 15, 2002); *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 690 (6th Cir. 2007) (noting that promissory estoppel is an alternative theory to recovery on an express contract). Although promissory estoppel has been applied in cases where parties have valid contracts, prior decisions indicate that such cases involved promises that did not change the terms of the existing contracts. *See Thomas Energy Corp. v. Caterpillar Fin. Servs. Corp.*, No. E2014-00226-COA-R3-CV, 2014 WL 7366676, at *7 (Tenn. Ct. App. Dec. 26, 2014) (citing *Bill Brown Constr. Co., Inc. v. Glen Falls Ins. Co.*, 818 S.W.2d 1, 11-12 (Tenn. 1991)) ("In such cases, the promise alleged was generally made at the time of contracting and operated to expand, not add to or vary the terms of the contract."); *Sparton Tech., Inc.*, 248 F. App'x at 690 (citing *Bill Brown Constr. Co.*, *Inc.*, 818 S.W.2d at 9-11) ("While cases do exist where the [promissory estoppel] doctrine has been applied where the parties have contracts, these cases have been limited to cases where a claim of promissory estoppel was advanced to expand the terms of, not change the terms of, an existing contract.").

In this case, the Joneses' promissory estoppel claim is based on their allegation that a BANA representative promised to cancel the scheduled foreclosure and allow them to pay their remaining deficiency over six or twelve months if they remitted the sum of $6,000.00.[9] According to the Joneses, had they not relied on this promise, they could have paid the outstanding arrearage before foreclosure. Moreover, we note that Mr. Jones asserted that he would have filed a bankruptcy petition to stop foreclosure had he known that BANA would not voluntarily agree to stop the scheduled sale.

As an initial matter, we note that one aspect of the alleged promise sought to be enforced is somewhat vague. First, there is no definitiveness as to whether the arrearage remaining after the $6,000.00 payment will be paid over six months or twelve months. Second, there is no clarity given as to *how* the remaining arrearage is to be paid. For example, assuming an operative six-month repayment period applied, are the Joneses afforded the entire six months to pay off the deficiency irrespective of whether monthly payments are made, or are they required to make monthly payments towards the

---

[9] The Joneses' brief on appeal states as follows to this end: "[T]he Joneses are simply alleging that they were promised that if they paid $6,000.00 the sale would be cancelled and they would be allowed to pay the balance *over a six or twelve-month period*." (emphasis added).

- 14 -

arrearage throughout the six-month period? Although these questions arise from the alleged promise, they remain unanswered.

The vagueness of the promise notwithstanding, another basis supports the dismissal of the Joneses' promissory estoppel claim. Namely, we note, as the trial court did, that the Joneses' promissory estoppel claim seeks to change the terms of existing, valid contracts. As we already discussed, case law indicates that promissory estoppel is not available as a claim for such purposes. *See Thomas Energy Corp.*, 2014 WL 7366676, at \*7 (holding that the defendant was entitled to judgment as a matter of law on plaintiff's promissory estoppel claim when the promise at issue "was made well after the lease agreements were executed and would have drastically varied the terms in existence"); *LeBlanc v. Bank of Am., N.A.*, No. 2:13-cv-02001-JPM-tmp, 2013 WL 3146829, at \*15 (W.D. Tenn. June 18, 2013) (holding that the plaintiff's claim of promissory estoppel was barred because the plaintiff was seeking to change the terms of the deed of trust through a permanent loan modification). Although the Joneses maintain that they are not seeking to amend the terms of their original contract, their position on this issue is belied by several of their own statements throughout their principal and reply briefs. In their reply brief, for example, the Joneses state as follows: "On April 19, 2011, Appellants were unambiguously promised that the [foreclosure sale would be canceled] in exchange for their payment of $6,000.00 and execute an agreement to catch up the rest over a six or twelve-month period. . . . The terms of the Note or Deed of Trust *would not otherwise* be changed." (emphasis added) Given the nature of the alleged promise, it is quite clear that the Joneses seek to alter when their loan payments are due.

Although we can affirm the trial court's dismissal of the promissory estoppel claim in light of the above discussion, we note that the trial court's summary judgment order relied on an additional basis for dismissal: the Statute of Frauds. In dismissing the Joneses' promissory estoppel claim on this basis, the trial court remarked as follows: "Plaintiffs' promissory estoppel claim is barred by the Statute of Frauds because any oral promise to modify a loan in any manner would be a modification to an existing loan agreement, which would require a signed writing to be enforceable." There was no dispute at summary judgment concerning the fact that no writing existed with respect to the alleged forbearance/repayment agreement, and as previously discussed, this served as an impediment to the Joneses' breach of contract claim. Whether it should also serve as a bar to the Joneses' promissory estoppel claim is less certain. We note that jurisdictions across the country have adopted a variety of approaches concerning the applicability of the Statute of Frauds to a promissory estoppel claim. *See Casazza v. Kiser*, 313 F.3d 414, 421-22 (8th Cir. 2002) (citations omitted) (summarizing the prevailing approaches). Whereas some courts have allowed promissory estoppel claims to survive a Statute of Frauds defense under specified circumstances, other courts have held that allowing promissory estoppel to remove an oral contract from the Statute of Frauds would render the Statute of Frauds nugatory. *Id.* (citations omitted). On its face, the Statute of Frauds codified at Tennessee Code Annotated section 29-2-101(b)(1) would appear to bar the

alleged promise at issue. *See* Tenn. Code Ann. § 29-2-101(b)(1) (providing that "[n]o action shall be brought . . . upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement . . . shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor"). However, we note that a lack of clarity exists under Tennessee case law as to whether promissory estoppel could survive a Statute of Frauds defense. A detailed overview of this subject was recently provided by a federal district court in *Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co.*, 823 F.Supp.2d 786 (W.D. Tenn. 2011). While the *Carbon Processing* court observed that several Tennessee decisions held that promissory estoppel is not an exception to the Statute of Frauds, it noted that another line of cases contradicted these decisions and held that promissory estoppel is a viable cause of action even where the Statute of Frauds renders an oral promise unenforceable. *Id.* at 819-20. Given the apparent uncertainty of the law, the *Carbon Processing* court filed a certification order with the Tennessee Supreme Court pursuant to Tennessee Supreme Court Rule 23 requesting clarity as to whether the doctrine of promissory estoppel could operate as an exception to the Statute of Frauds. However, the Tennessee Supreme Court ultimately denied the certification upon a determination that the matter presented was moot. *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. M2011-02571-SC-R23-CQ (Tenn. Feb. 23, 2012) (order denying Rule 23 certification).

For purposes of this appeal, we need not decide whether the trial court erred in relying on the Statute of Frauds as a basis to dismiss the asserted promissory estoppel claim. Indeed, as previously addressed, dismissal of the Joneses' promissory estoppel claim is appropriate on other grounds. With this in mind, any discussion attempting to resolve the conflict identified in *Carbon Processing* is pretermitted as advisory. Exploring whether, and under what circumstances, promissory estoppel could operate as an exception to the Statute of Frauds must await another day.[10]

---

[10] In exploring these issues in the future, it might be important to consider any differences that exist among the various Statute of Frauds provisions in the Tennessee Code, whether that of Tenn. Code Ann. § 29-2-101(a), Tenn. Code Ann. § 29-2-101(b), or Tenn. Code Ann. § 47-2-201. Indeed, when the Tennessee Supreme Court denied Rule 23 certification in *Carbon Processing*, it not only held that the certified questions were moot, but also opined that "the certified questions are stated too broadly in that they address promissory estoppel as a possible exception to Tennessee's general statute of frauds, Tenn. Code Ann. § 29-2-101 (Supp. 2011), rather than as a possible exception to the statute of frauds under Tennessee's Uniform Commercial Code, Tenn. Code Ann. § 47-2-201 (2001)." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. M2011-02571-SC-R23-CQ (Tenn. Feb. 23, 2012) (order denying Rule 23 certification).

*Negligent misrepresentation*

The Joneses' amended petition also asserted a claim for negligent misrepresentation. In Tennessee, our courts have adopted the Restatement (Second) of Torts § 552 (1977) as the "guiding principle" concerning such claims. *Hodge v. Craig*, 382 S.W.3d 325, 344 (Tenn. 2012) (citations omitted). Liability under this standard is more restricted than liability for intentional misrepresentation, and it is limited to persons "'who, in the course of [their] business, profession or employment, or in any other transaction in which [they have] a pecuniary interest, [supply] false information for the guidance of others in their business transactions.'" *Id.* (quoting Restatement (Second) of Torts § 552(1)). To recover on a claim for negligent misrepresentation, a "plaintiff must establish that '(1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information.'" *Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2001) (quoting *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). In addition, it is well-settled that the misrepresentation must consist of a statement of a "material past or present fact." *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) (citation omitted). As such, a statement of intention is not actionable, nor is a representation concerning future events. *Id.* (citations omitted).

Here, the Joneses' misrepresentation claim is predicated upon the alleged representation made by the BANA representative on April 19, 2011 that the May foreclosure sale would be postponed if the Joneses paid $6,000.00. This promise to forbear is clearly a representation of a future event and not a statement of a "material past or present fact." The trial court recognized this and concluded that it countenanced against the viability of the negligent misrepresentation claim. We agree. Because the asserted statement relied upon concerns a statement of intention and representation of a future event, it is legally infirm to support a cause of action for negligent misrepresentation. *See id.* (noting that "representations concerning future events are not actionable even though they may later prove to be false"); *Int'l Mkt. & Rest., Inc. v. Belmont Univ.*, No. M2010-00005-COA-R3-CV, 2010 WL 4514980, at *3 (Tenn. Ct. App. Nov. 9, 2010) (holding that plaintiffs' negligent misrepresentation claim must fail because "informing the plaintiffs that their streets will be closed is a representation of a future event"); *Gardner v. Anesthesia & Pain Consultants, P.C.*, No. E2003-03027-COA-R3-CV, 2004 WL 2715304, at *7 (Tenn. Ct. App. Nov. 30, 2004) (noting that, although the alleged statements of future intentions could support a claim for promissory fraud, the trial court did not err in granting summary judgment to the defendant on the plaintiff's misrepresentation claims); *Harden v. U.S. Bank Nat'l Ass'n for the Holders of the Citigroup Mortg. Loan Trust, Inc.*, No. 2:15-cv-02438-STA-tmp, 2016 WL 6208610, at *3 (W.D. Tenn. Oct. 24, 2016) (holding that a defendant's alleged promise that future mortgage payments would decrease after the plaintiffs finished trial period payments did

- 17 -

not involve a statement regarding a "past or present" fact). We find no reason to disturb the trial court's dismissal of this claim at summary judgment.

*Rescission*

Although the Joneses seek rescission of the foreclosure sale through this lawsuit, it is clear that rescission is not a cause of action, but a remedy which "'should be exercised sparingly and only when the situation demands such.'" *Richards v. Taylor*, 926 S.W.2d 569, 571 (Tenn. Ct. App. 1996) (quoting *James Cable Partners v. Jamestown*, 818 S.W.2d 338, 343 (Tenn. Ct. App. 1991)). On appeal, the Joneses do not dispute that rescission is a remedy as opposed to a cause of action. Given our conclusion herein that the trial court properly granted summary judgment as to all of the Joneses' asserted causes of action, we also determine that the trial court did not err in concluding that their request for rescission lacked merit.

## Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of the Joneses' claims at summary judgment. Costs of this appeal are assessed against the Appellants, Danny Jones and DeEtta Jones, and their surety, for which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE